IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 14-CV-02182-MSK-KLM

UNITED STATES COMMODITY FUTURES TRADING COMMISSION,

       Plaintiff,

v.

R2 CAPITAL GROUP, LLC, RAST
INVESTOR GROUP, LLC,
MADIGAN ENTERPRISES, INC.,
BULLETPROOF VEST, INC.,
RYAN TOMAZIN,
RYAN MADIGAN, and
RANDELL A. VEST,

       Defendants.

---

## ANSWER TO FIRST AMENDED COMPLAINT

---

   R2 Capital Group (R2) hereby files their Answer to the United States Commodity Futures Trading Commission ("Commission") First Amended Complaint and in support thereof states as follows:

## I. SUMMARY

1.    Denied as to R2.

2.    R2 has insufficient information to either admit or deny this allegation.

3.    R2 has insufficient information to either admit or deny this allegation.

4.    R2 has insufficient information to either admit or deny this allegation.

5.    R2 has insufficient information to either admit or deny this allegation..

6.    R2 has insufficient information to either admit or deny this allegation.

7.    Denied that Madigan and Vest controlled R2 Capital, directly or indirectly, and did

not act in good faith or knowingly induced, directly or indirectly, the acts of R2 Capital described

herein or that Madigan and Vest are liable for the acts of R2 Capital pursuant to Section 13(b) of

the Act, 7 U.S.C. § 13c(b) (2012).

8.  R2 has insufficient information to either admit or deny this allegation.

9.  Admitted.

10.  Denied.

## II.
## JURISDICTION AND VENUE

11.  Admitted.

12.  Admitted.

## III.
## THE PARTIES

13.  R2 has insufficient information to either admit or deny this allegation.

14.  Admitted.

15.  Admitted
.

16.  Denied that Defendant Ryan Madigan resides in Raleigh, North Carolina.  Admitted

as to the rest.

17.  Admitted that Defendant Madigan Enterprises, Inc. is a corporation formed in 2004

by defendant Madigan's father in Pittsford, New York, but denied that through it defendant

Madigan co-owned, controlled and operated defendant R2 Capital.

18.  Admitted that Defendant Randell A. Vest resides in Fort Myers, Florida and that

during the relevant period, Vest was also the sole owner, manager and principal of defendant

Bulletproof Vest, defendant Vest's holding company but not his alter ego.  Admitted that Vest

first registered with the Commission on September 27, 2013, as an Associated Person ("AP") of

R2 Capital.

19.  Defendant Bulletproof Vest, Inc. is a corporation formed in 2009 by defendant Vest

in Fort Myers, Florida, solely owned and operated by defendant Vest, and through which

defendant Vest co-owned, controlled and operated defendant R2 Capital.

19

20.   Defendant R2 Capital Group LLC is a Colorado limited liability company created by Tomazin in November 2008, and was initially jointly and equally owned by Tomazin and Madigan, and located at Tomazin's home address.  In July 2009, defendants Tomazin, Madigan and Vest, through RAST, Madigan Enterprises and Bulletproof Vest (collectively, "defendant holding companies"), assumed equal ownership of R2 Capital but not control and management. Admitted that R2 Capital was never registered with the Commission in any capacity until September 27, 2013, when it registered as a Commodity Pool Operator ("CPO").

IV.
STATUTORY BACKGROUND

21.   R2 has insufficient information to either admit or deny this allegation.

V.
FACTS

A.   Defendants' Trading Activities And Fraudulent Activities

22.   Denied that During the relevant period, defendants Tomazin, Vest, and Madigan equally owned, and jointly controlled, the operations of R2 Capital through defendant holding companies. Denied that Tomazin and Madigan were primarily, but not exclusively, responsible for R2 Capital's operations, including managing the accounting, reporting and investor relations responsibilities; Admitted that Tomazin is the sole signatory on each of R2 Capital's and the Commercial Pool's bank accounts, including an account used to accept pool participant deposits; R2 has insufficient information to either admit or deny the remainder of this allegation.

23.   Admitted.

24.   Denied.

25.   Denied.

26.   Admitted that defendant Tomazin provided Pool Participant 1, via email, with a "Confidential Information Memorandum," and a "Limited Partnership Agreement," . Denied that defendants Madigan and Vest described to Pool Participant 1 as the terms of the agreement

between defendant R2 Capital and its participants in the Commercial Pool.  The remainder of this allegation is admitted.

27.   R2 has insufficient information to either admit or deny this allegation.

28.   Denied.

29.   Admitted.

30.   Denied that defendants Madigan and Vest misappropriated participant funds while the Commercial Pool was losing money; comingled participant funds with their own funds; loaned funds from the Commercial Pool to themselves. Admitted that the Commercial Pool was never subject to a third-party independent audit; R2 has insufficient information to either admit or deny the remainder of this allegation.

31.   Admitted that In December 2009, defendant Tomazin opened, or caused to be opened, the Commercial Pool's trading account at the now-defunct futures commission merchant ("FCM") Peregrine Financial Group ("PFG"), where defendant R2 Capital used pool participant funds to trade forex.   Admitted that Defendants Tomazin, Madigan and Vest were the only signatories on trading account opening documents for R2 Capital and/or the Commercial Pool, and as principals of R2 Capital, all had trading authority.

32.   Admitted.

33.   Admitted that In August 2010, R2 Capital opened a Commercial Pool trading account at Interactive Brokers, LLC ("IBL"), a registered FCM.  Between October 2010 and July 2011, R2 Capital traded E-mini S&P 500 futures and securities products in this account and that this trading account realized gains of more than $200,000.  Denied as to the rest.

34.   R2 has insufficient information to either admit or deny this allegation.

35.   Denied that during the relevant period, all defendants both orally and in writing falsely represented to pool participants that their share of the Commercial Pool had increased in value due to successfully trading, when in fact no trading was taking place.  Admitted that from August 2011 through March 2013, defendant Tomazin knowingly, willfully, or with

19

reckless disregard for the truth, issued false monthly account statements to Pool Participant 1,

that misrepresented that the fund returned profits from its successfully trading, increased in

value, and incurred trading expenses charged to pool participants.

36.    Admitted.

37.    Admitted.

38.    Denied.

39.    R2 has insufficient information to either admit or deny this allegation.

40.    R2 has insufficient information to either admit or deny this allegation.

41.    R2 has insufficient information to either admit or deny this allegation.

B.    Defendants Misappropriated Pool Participants' Funds

42.    Denied.

43.    Denied.

C.    Defendants Concealed Their Misappropriation Of Participant Funds

44.    Denied.

45.    Denied.

46.    Admitted that in October 2013, shortly after R2 Capital registered with the

Commission as a CPO, the NFA noticed several inconsistencies in the information R2 Capital

represented in its registration and that, in November 2013, the NFA commenced an unannounced

examination of R2 Capital. Denied that that defendants were unable to produce basic documents

and other information associated with the operation of the business, or that the limited bank

records produced by defendants to the NFA revealed a high number of questionable transactions

because Tomazin was exclusively in charge of these activities.

47.    Admitted.

48.    R2 has insufficient information to either admit or deny this allegation.

D. R2 Capital Commingled Pool Participant Funds

49.    Admitted.

19

50.   Denied as to Madigan and Vest.

## VI.

### VIOLATIONS OF THE COMMODITY EXCHANGE ACT
### COUNT ONE
### FRAUD IN CONNECTION WITH COMMODITY FUTURES CONTRACTS
Violations of Sections 4b(a)(1)(A)-(C) of the Act

51.   The answers to the allegations set forth in paragraphs 1 through 50 are re-alleged

and incorporated herein by reference.

52.   Admitted

53.   Denied as to Madigan and Vest.

54.   Denied as to Madigan and Vest.

55.   Denied.

56.   Denied.

57.   Denied.

### COUNT TWO

### FRAUD IN CONNECTION WITH FOREX CONTRACTS
Violations of Sections 4b(a)(2)(A)-(C) of the Act

58.   The allegations set forth in paragraphs 1 through 57 are re-alleged and incorporated

herein by reference.

59.   Admitted.

60.   Admitted.

61.   Denied.

62.   Denied.

63.   Denied that Madigan and Vest, directly or indirectly, controlled R2 Capital and

did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting R2

Capital's violations alleged in this count.  Denied that Madigan and Vest are thereby liable for R2

Capital's violations of the Act and Regulations, as alleged in this count, pursuant to Section

13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

64.    Denied.

65.  Denied.

## COUNT THREE
### FRAUD BY A COMMODITY POOL OPERATOR
Violations of Section 4o(1)(A) and (B) of the Act

66.    The answers to the allegations set forth in paragraphs 1 through 65 are re-alleged

and incorporated herein by reference.

67.    Admitted.

68.    Denied.

69.    Denied.

70.    Denied that Madigan and Vest, directly or indirectly, controlled R2 Capital and

did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting R2

Capital's violations alleged in this count.  Denied that Madigan and Vest are thereby liable for R2

Capital's violations of the Act and Regulations, as alleged in this count, pursuant to Section

13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

71.    Denied.

72.    Denied.

## COUNT FOUR
### COMMINGLING OF POOL PARTICIPANT FUNDS Violation
of Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c)

73.    The answers to the allegations set forth in paragraphs 1 through 72 are re-alleged

and incorporated herein by reference.

74.    R2 has insufficient information to either admit or deny this allegation.
.
75.    Dened as to Madigan and Vest.

76.   Denied.

77.   Admitted. .

VII.

RELIEF REQUESTED

WHEREFORE, R2 requests that this Complaint be dismissed and for such other relief as this

Court sees fit to grant.

Dated:  December 15, 2015

**BKN Murray, LLP**

s/  Michael J. Davis
Michael J. Davis, #44287
7695 E. Tennessee Ave., Suite 330
Denver, CO 80224
Ph: (720) 361-6036
Fax: (303) 758-5055
mdavis@bknmurray.com