IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 14-CV-02182-MSK-KLM

UNITED STATES COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v.

R2 CAPITAL GROUP, LLC, RAST INVESTOR GROUP, LLC,
MADIGAN ENTERPRISES, INC.,
BULLETPROOF VEST, INC.,
RYAN TOMAZIN,
RYAN MADIGAN, and
RANDELL A. VEST,

Defendants.

---

**ANSWER TO FIRST AMENDED COMPLAINT**

---

Defendant Ryan Madigan ("Madigan") and Madigan Enterprises Inc. ("MEI") by and through their attorney Michael J. Davis of BKN Murray LLP hereby files their answer to Plaintiff United States Commodity Futures Trading Commission ("CFTC"), First Amended Complaint by its attorneys, and in support thereof, states as follows:

I.
SUMMARY

1. Denied as to defendants, Ryan Madigan ("Madigan"), and Madigan Enterprises, Inc. ("MEI").

2. Denied as to Madigan and MEI.

3. Denied as to Madigan and MEI.

4. Denied as to Madigan and MEI.

5. Denied as to Madigan and MEI.

6. Denied as to Madigan and MEI.

7. Admitted that Tomazin, controlled R2 Capital, directly or indirectly, denied as to Madigan and MEI. Denied as to Madigan and MEI that they did not act in good faith or knowingly induced, directly or indirectly, the acts of R2 Capital described herein; Denied as to Madigan and MEI that they are liable for the acts of R2 Capital pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

8. Madigan and MEI neither admit or deny this allegation.

9. Admitted.

10. Denied as to Madigan and MEI.

## II.
## JURISDICTION AND VENUE

11. Admitted.

12. Admitted..

## III.
## THE PARTIES

13. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

14. Defendants MEI and Madigan have insufficient information to either admit or deny whether Tomazin has ever been registered with the Commission in any capacity. The remainder of this allegation is admitted.

15. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

16. Admitted that Madigan resided in Raleigh, North Carolina during the relevant period, and that Madigan was also an officer and principal of defendant MEI, Madigan's holding company. Denied that MEI was Madigan's alter ego. Admitted that during the relevant period, Madigan was never registered with the Commission in any capacity.

17. Admitted that Defendant Madigan Enterprises, Inc. is a corporation formed in 2004 by defendant Madigan's father in Pittsford, New York, and denied that through MEI defendant Madigan co-owned, controlled and operated defendant R2 Capital.

18. Admitted.

19. Admitted.

20. Admitted that Defendant R2 Capital Group LLC is a Colorado limited liability company created by Tomazin in November 2008, and was initially jointly and equally owned by Tomazin and Madigan but controlled by Tomazin, and located at Tomazin's home address. In July 2009, defendants Tomazin, Madigan and Vest, through RAST, Madigan Enterprises and Bulletproof Vest (collectively, "defendant holding companies"), assumed equal ownership og R2 Capital, but not management and control of R2. Admitted that R2 Capital was never registered with the Commission in any capacity until September 27, 2013, when it registered as a Commodity Pool Operator ("CPO").

## IV.
## STATUTORY BACKGROUND

21. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

## V.
## FACTS

### A. Defendants' Trading Activities And Fraudulent Activities

22. Admitted that defendants Tomazin, Vest, and Madigan equally owned R2 Capital, but denied that they jointly controlled, the operations of R2 Capital through defendant holding

companies. Denied that Madigan was responsible for R2 Capital's operations, including managing the accounting, reporting and investor relations responsibilities. Admitted that Tomazin is also the sole signatory on each of R2 Capital's and the Commercial Pool's bank accounts, including an account used to accept pool participant deposits. Admitted that Madigan is a signatory on trading account opening documents for R2 Capital and the Commercial Pool, described immediately below. Denied that Vest is primarily, but not exclusively, responsible for managing R2 Capital's trading operations and managing the firm's trading platform.

23. Admitted.

24. Denied as to Madigan and MEI.

25. Denied as to Madigan and MEI..

26. Denied as to Madigan and MEI.

27. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

28. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

29. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

30. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

31. Defendants MEI and Madigan have insufficient information to either admit or deny the allegation that in December 2009, defendant Tomazin opened, or caused to be opened, the Commercial Pool's trading account at the now-defunct futures commission merchant ("FCM") Peregrine Financial Group ("PFG"), where defendant R2 Capital used pool participant funds to trade forex. Denied that Defendants Tomazin, Madigan and Vest were the only signatories on

trading account opening documents for R2 Capital and/or the Commercial Pool, and as principals of R2 Capital, all had trading authority.

32. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

33. Defendants MEI and Madigan have insufficient information to either admit or deny whether in August 2010, R2 Capital opened a Commercial Pool trading account at Interactive Brokers, LLC ("IBL"), a registered FCM or whether between October 2010 and July 2011, whether R2 Capital traded E-mini S&P 500 futures and securities products in this account and whether this trading account realized gains of more than $200,000. Denied that Madigan and MEI falsely and fraudulently concealed from Pool Participants 2 and 3, respectively, that defendants had closed the PFG forex account, that Pool Participants' funds had been transferred to a new account at IBL, that the Commercial Pool was no longer trading forex, and that the Commercial Pool was now trading E-mini S&P 500 futures and securities products.

34. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

35. Denied that during the relevant period, Madigan or MEI orally and in writing falsely represented to pool participants that their share of the Commercial Pool had increased in value due to successfully trading, when in fact no trading was taking place. Defendants MEI and Madigan have insufficient information to either admit or deny whether from August 2011 through March 2013, defendant Tomazin knowingly, willfully, or with reckless disregard for the truth, issued false monthly account statements to Pool Participant 1, that misrepresented that the fund returned profits from its successfully trading, increased in value, and incurred trading expenses charged to pool participants and whether these monthly account statements were false because the Commercial Pool ceased all trading a month earlier, in July 2011, and thus no profits or expenses could have been incurred from trading after that time.

36. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

37. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

38. Admitted that between the time of Pool Participant 2's initial investment in April 2010 and February 2014, defendant Madigan informed Pool Participant 2 many times that Commercial Pool was earning positive returns, and that the value of the investment was increasing and that during July 14 to 17, 2011, defendant Madigan represented to Pool Participant 2, via email, that "[y]our returns on the account have been steady and WAY over market. IE your making money," and that "not adding any additional funds are what are hurting your progress . . . IE get some cash in here [.]" Denied that said representations were knowingly false and fraudulent.

39. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

40. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

41. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation because this allegation doesn't refer to any specific representations

B. <u>Defendants Misappropriated Pool Participants' Funds</u>

42. Denied as to Madigan and MEI.

43. Denied as to Madigan and MEI.

C. <u>Defendants Concealed Their Misappropriation Of Participant Funds</u>

44. Denied as to Madigan and MEI.

45. Denied that defendant Madigan represented that the money could not be returned because it was being held up by "U.S. Regulators." Defendants MEI and Madigan have

insufficient information to either admit or deny that from late December 2013 through early July 2014, defendant Tomazin claimed that the funds were being held up by the NFA or the banks holding the money.

46. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

47. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

48. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

D. R2 Capital Commingled Pool Participant Funds

49. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

50. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

## VI.
## VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE
### FRAUD IN CONNECTION WITH COMMODITY FUTURES CONTRACTS
Violations of Sections 4b(a)(1)(A)-(C) of the Act

51. Defendants Madigan and MEI reassert their answers to the allegations set forth in paragraphs 1 through 50 and incorporate them herein by reference.

52. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

53. Denied as to Madigan and MEI.

54. Denied as to Madigan and MEI.

55. Denied as to Madigan and MEI.

56. Denied as to Madigan and MEI.

57. Denied as to Madigan and MEI.

## COUNT TWO
## FRAUD IN CONNECTION WITH FOREX CONTRACTS Violations of Sections 4b(a)(2)(A)-(C) of the Act

58. Defendants Madigan and MEI reassert their answers to the allegations set forth in paragraphs 1 through 57 and incorporate them herein by reference.

59. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

60. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

61. Denied as to Madigan and MEI.

62. Denied as to Madigan and MEI.

63. Denied as to Madigan and MEI.

64. Denied as to Madigan and MEI.

65. Denied as to Madigan and MEI.

## COUNT THREE
## FRAUD BY A COMMODITY POOL OPERATOR
## Violations of Section 4o(1)(A) and (B) of the Act

66. Defendants Madigan and MEI reassert their answers to the allegations set forth in paragraphs 1 through 65 and incorporate them herein by reference.

67. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

68. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

69. Denied as to Madigan and MEI.

70. Denied as to Madigan and MEI.

71. Denied as to Madigan and MEI.

72. Denied as to Madigan and MEI.

COUNT FOUR
COMMINGLING OF POOL PARTICIPANT FUNDS Violation of Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c)

73. Defendants Madigan and MEI reassert their answers to the allegations set forth in paragraphs 1 through 72 and incorporate them herein by reference.

74. Defendants MEI and Madigan have insufficient information to either admit or deny this allegation.

75. Denied as to Madigan and MEI.

76. Denied as to Madigan and MEI.

77. Denied as to Madigan and MEI.

VII.
RELIEF REQUESTED

Wherefore, Defendants MEI and Madigan request that all the counts of this Complaint be dismissed and for such other relief as this Court sees fit to grant.

## AFFIRMATIVE DEFENSES

Defendants Madigan and MEI further assert the following affirmative defenses on information and belief: Tomazin approached Madigan about participating in a business to sell investments, using some of Madigan's contacts.

1. At all times, Tomazin controlled the operations, representations and any alleged solicitations involved with the referrals from Madigan.

2. At all times, Tomazin also controlled the regulatory structure involved with the entity which was formed and known as R2 Capital.

3. At all times, Tomazin controlled the accounting and bookkeeping records that R2 was required to keep, including tax returns, payments to clients, investment and representations regarding balances in R2's accounts.

4. When clients requested status on their accounts, Madigan referred all questions to Tomazin who exercised complete control of all matters relating to investment and accounting.

5. Without admitting any allegations of the Complaint, Defendant alleges that the Complaint fails to state facts sufficient to constitute a cause of action against Defendant Madigan and MEI.

6. Without admitting any allegations of the Complaint Madigan and MEI, alleges that Plaintiff's inexcusable and unreasonable delay in filing and serving this action has operated to the detriment and prejudice of Madigan and MEI, and as a consequence thereof, Plaintiff's rights are barred by the doctrine of laches.

7. The damages, if any, for which Plaintiff seeks relief were proximately caused in whole or in part by Tomazin's own negligent or willful acts or omissions and Madigan and MEI is in no way responsible for such acts, omissions, or failures.

8. The damages for which Plaintiff seeks relief were proximately caused, if at all, in whole or in part by Tomazin's negligent or willful acts or omissions and Defendant is in no way responsible for such acts, omissions, or failures.

9. Plaintiff would be unjustly enriched if it recovered from this answering Madigan and MEI any of the damages alleged in the first amended complaint.

10. Plaintiff's purported claims against Defendant are barred by the doctrine of unclean hands.

11. Madigan and MEI, at all times, acted in good faith and did not, directly or indirectly, know, induce, or in any way participate in any wrongful act or acts as alleged in the Complaint.

12. No one relied on any representations made by Madigan and MEI in undertaking any of the conduct alleged in the Complaint, and if there was any such reliance, then said reliance was unjustified or unreasonable.

13. Without admitting any allegations of the Complaint, Madigan and MEI alleges that if the Plaintiff damages occurred in the manner set forth in the Complaint, the injuries were caused solely by the action of some other third parties other than Defendant.

14. Defendant reserves the right to amend this Answer as additional facts are discovered.

15. Defendant alleges as an affirmative defense that Defendants are entitled to a set off for all amounts transferred.

Dated: December 14, 2015

**BKN Murray, LLP**

s/ Michael J. Davis
Michael J. Davis, #44287
7695 E. Tennessee Ave., Suite 330
Denver, CO 80224
Ph: (720) 361-6036
Fax: (303) 758-5055
mdavis@bknmurray.com