IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 14-CV-02182-MSK-KLM

UNITED STATES COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

R2 CAPITAL GROUP, LLC,
RAST INVESTOR GROUP, LLC,
MADIGAN ENTERPRISES, INC.,
BULLETPROOF VEST, INC.,
RYAN TOMAZIN,
RYAN MADIGAN, and
RANDELL A. VEST,

    Defendants.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

**Date of Conference:** January 26, 2016

**Appearing for Plaintiff:**

    Luke B. Marsh, Esq.
    Sophia Siddiqui, Esq.
    Commodity Futures Trading Commission, Division of Enforcement
    1155 21st Street, N.W.
    Washington, D.C. 20581
    Tel: (202) 418-5322 (Marsh)
    Tel: (202) 418-6774 (Siddiqui)
    Facsimile: (202) 418-5124
    lmarsh@cftc.gov
    ssiddiqui@cftc.gov

**Appearing for Defendants Ryan Tomazin and RAST Investor Group, LLC**

Forrest W. Lewis
FORREST W. LEWIS, P.C.
1019 8th Street, Suite 310
P.O. Box 677
Golden, Colorado 80402
Ph: (303) 279-3333
Fax: (303) 278-7691
flewispc@aol.com

**Appearing for Defendants R2 Capital Group, LLC, Madigan Enterprises, Inc., Ryan Madigan, Bulletproof Vest, Inc., and Randall Vest[1]**

~~Michael J. Davis~~ Stuart borne
BKN Murray, LLP
6795 E. Tennesse Ave., St. 330
Denver, CO 80224
Ph: (303) 758-5100
Fax: (303) 758-5055
mdavis@bknmurray.com

## 2. STATEMENT OF JURISDICTION

This Court has jurisdiction over the claims in this action pursuant to Section 6c of the Commodity Exchange Act ("Act"), as amended, to be codified at 7 U.S.C § 13a-1 (2012) and Section 2(c)(2) of the Act, as amended, to be codified at 7 U.S.C. § 2(c)(2).

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.  **Plaintiff's Claims:**

Since at least December 2009, defendants Ryan Tomazin ("Tomazin"), Ryan Madigan ("Madigan"), Randell A. Vest ("Vest"), RAST Investor Group, LLC ("RAST"), Madigan Enterprises, Inc. ("Madigan Enterprises"), Bulletproof Vest, Inc. ("Bulletproof Vest"), and their company, R2 Capital Group LLC ("R2 Capital") (collectively, "defendants"), fraudulently solicited approximately $2.4 million from at least four (4)

---

[1] Plaintiff and Defendants are collectively referred to as the "parties" hereinafter.

individuals to participate in a commodity pool, R2 Commercial Capital Partners I L.P. (the "Commercial Pool"), to trade foreign exchange ("forex") and, later, futures contracts. Of the $2.4 million taken in from pool participants, defendants lost approximately $1.2 million through trading, and misappropriated the remaining $1.2 million for their personal use. In soliciting pool participants, defendants fraudulently represented that the pool was continuing to trade forex, when in truth the pool had ceased trading forex and was instead trading in financial futures and other securities products. Defendants also distributed false account statements and performance reports to pool participants that represented that the Commercial Pool was earning profits during a period where no trading occurred, and while defendants were misappropriating pool funds.

Defendants Tomazin, Madigan and Vest's conduct occurred within the scope of their agency or employment with RAST, Madigan Enterprises and Bulletproof Vest, respectively, and with R2 Capital; therefore, RAST, Madigan Enterprises, Bulletproof Vest and R2 Capital are liable for these acts and omissions pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation ("Regulation") 1.2, 17 C.F.R. § 1.2 (2013). Further, Tomazin, Madigan and Vest controlled R2 Capital, such that they are liable for the acts of R2 Capital pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

By virtue of this conduct and the conduct further described in pleadings and papers in this case, defendants violated Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012); 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1) & (2)(A)-(C) (Supp. III 2009), with respect to conduct before July 16, 2011; 4b(a)(2)(A)-(C) of the Act, as amended,

to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2012), with respect to conduct on or after July 16, 2011; 4o(1)(A) & (B) of the Act, 7 U.S.C. §§ 6o(1)(A) & (B) (2012); and, Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2013).

b. **Defendants claims**

Defendants' Ryan Madigan ("Madigan"), Randell A. Vest ("Vest"), , Madigan Enterprises, Inc. ("Madigan Enterprises"), Bulletproof Vest, Inc. ("Bulletproof Vest"), and their company, R2 Capital Group LLC ("R2 Capital") state that Tomazin, controlled R2 Capital, directly or indirectly, and defendants Ryan Madigan ("Madigan"), Randell A. Vest ("Vest"), , Madigan Enterprises, Inc. ("Madigan Enterprises"), Bulletproof Vest, Inc. ("Bulletproof Vest"), and their company, R2 Capital Group LLC ("R2 Capital") (collectively, "defendants"),acted in good faith and did not knowingly induce or control, directly or indirectly, the acts of R2 Capital and are not liable for the acts of R2 Capital pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012). R2 Capital claims that it was the vehicle that Tomazin used personally for his own benefit and that all liability should flow to Tomazin individually.

R2 Capital Group LLC is a Colorado limited liability company created by Tomazin in November 2008, and was initially jointly and equally owned by Tomazin and Madigan but was always controlled by Tomazin, and located at Tomazin's home address. In July 2009, defendants Tomazin, Madigan and Vest, through RAST, Madigan Enterprises and Bulletproof Vest (collectively, "defendant holding companies"), assumed equal ownership of R2 Capital, but not management and control of R2.

Tomazin, controlled, the operations of R2 Capital including managing the

4

accounting, reporting and investor relations responsibilities. Tomazin was also the sole signatory on each of R2 Capital's and the Commercial Pool's bank accounts, including an account used to accept pool participant deposits. Although Madigan was a signatory on trading account opening documents for R2 Capital and the Commercial Pool, and Vest was primarily, but not exclusively, responsible for managing R2 Capital's trading operations and managing the firm's trading platform, Tomazin opened, or caused to be opened, the Commercial Pool's trading account at the now-defunct futures commission merchant ("FCM") Peregrine Financial Group ("PFG"), where defendant R2 Capital used pool participant funds to trade forex. It was Tomazin who falsely and fraudulently concealed from Pool Participants 2 and 3, respectively, that he had closed the PFG forex account, that Pool Participants' funds had been transferred to a new account at IBL, that the Commercial Pool was no longer trading forex, and that the Commercial Pool was now trading E-mini S&P 500 futures and securities products. Tomazin knowingly, willfully, or with reckless disregard for the truth, issued false monthly account statements to Pool Participant 1, that misrepresented that the fund returned profits from its successfully trading, increased in value, and incurred trading expenses charged to pool participants. These monthly account statements were false because the Commercial Pool ceased all trading a month earlier, in July 2011, and thus no profits or expenses could have been incurred from trading after that time.

Although between the time of Pool Participant 2's initial investment in April 2010 and February 2014, Pool Participant 2 were informed many times that Commercial Pool was earning positive returns, and that the value of the investment was increasing and that during July 14 to 17, 2011, defendant Madigan represented to Pool Participant

5

2, via email, that "[y]our returns on the account have been steady and WAY over market. IE your making money," and that "not adding any additional funds are what are hurting your progress . . . IE get some cash in here [.]" The representation, however, was based on information provided by Tomazin.

Tomazin has already plead guilty and admitted to many of these acts.

### 4. UNDISPUTED FACTS

1. The Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

2. This Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, as amended, 7 U.S.C. § 13a-1(a) (2012), which authorizes the Commission to seek injunctive and other relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

3. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because at least some of the acts and practices in violation of the Act and Regulations occurred within this district.

4. In 2009, Tomazin formed R2 Capital as a limited liability company, with himself as its registered agent. During the relevant period, Tomazin was also the sole owner, manager and principal of defendant RAST Investor Group.

5. Madigan resided in Raleigh, North Carolina during the relevant period, and was also an officer and principal of defendant Madigan Enterprises, Madigan's holding company.

6. Madigan Enterprises, Inc. is a corporation formed in 2004 by defendant Madigan's father in Pittsford, New York, and through which defendant Madigan co-owned, controlled and operated defendant R2 Capital.

7. Defendant Randell A. Vest resides in Fort Myers, Florida. During the relevant period, Vest was also the sole owner, manager and principal of defendant Bulletproof Vest, defendant Vest's alter ego and holding company. Vest first registered with the Commission on September 27, 2013, as an Associated Person ("AP") of R2 Capital.

8. Defendant Bulletproof Vest, Inc. is a corporation formed in 2009 by defendant Vest in Fort Myers, Florida, solely owned and operated by defendant Vest, and through which defendant Vest co-owned, controlled and operated defendant R2 Capital.

9. Defendant R2 Capital Group LLC is a Colorado limited liability company created by Tomazin in November 2008, and was initially jointly and equally owned and controlled by Tomazin and Madigan, and located at Tomazin's home address. In July 2009, defendants Tomazin, Madigan and Vest, through RAST, Madigan Enterprises and Bulletproof Vest, assumed total and equal control, ownership and management of R2 Capital. R2 Capital was never registered with the Commission in any capacity until September 27, 2013, when it registered as a Commodity Pool Operator ("CPO").

10. On or about November 10, 2008, defendant Tomazin filed R2 Capital's Articles of Organization with the Colorado Secretary of State, identifying Tomazin as R2 Capital's registered agent and Tomazin's home address in Denver, Colorado as its mailing address.

11. On September 18, 2009, Tomazin filed a Certificate of Limited Partnership for the Commercial Pool, identifying Tomazin as the Commercial Pool's registered agent, Tomazin's home address in Denver, Colorado, as its mailing address, and R2 Capital as the Commercial Pool's General Partner.

### 5. COMPUTATION OF DAMAGES

Plaintiff Commission is seeking restitution, rescission, disgorgement of ill-gotten gains and civil monetary penalties from each defendant. The Commission will determine the appropriate amounts of restitution, rescission, and disgorgement through discovery. Civil monetary penalty amounts under the Act are determined and calculated as the amount of the higher of: 1) $140,000 for each violation of the Act and Regulations committed on or after October 23, 2008; or 2) triple the monetary gain to defendants for each violation of the Act and the Regulations, plus post-judgment interest. *U.S. Commodity Futures Trading Com'n v. Trimble*, 2013 WL 317576, *9 (D. Colo. Jan. 28, 2013).

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. Date of Rule 26(f) meeting: December 18, 2015

b. Names of each participant and party he/she represented.

Luke Marsh
Sophia Siddiqui
*Counsel for Plaintiff*

Forrest W. Lewis
*Counsel for Defendants Ryan Tomazin and RAST Investor Group, LLC*

Michael J. Davis
*Counsel for Defendants Madigan Enterprises, Inc., Ryan Madigan, Bulletproof Vest, Inc., Randell A. Vest, and R2 Capital Group LLC*

    c.    Statement as to when Rule 26(a)(1) disclosures were made or will be made.

Plaintiff made its Rule 26(a)(1) disclosures on January 6, 2016.

Defendants Tomazin and RAST made their Rule 26(a)(1) disclosures on January 7, 2016. The ~~remaining~~ Madigan Enterprises defendants shall make ~~have not made~~ their Rule 26(a)(1) disclosures on or before Feb. 9, 2016.

    d.    Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

Plaintiff requests that defendants Madigan Enterprises, Inc., Ryan Madigan, Bulletproof Vest, and Randell A. Vest, R2 Capital immediately make their Rule 26(a)(1) disclosures. Otherwise, the parties have no proposed changes to the requirement of disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

    e.    Statement concerning any agreements to conduct informal discovery:

The parties have no agreements to conduct informal discovery.

    f.    Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The Parties agree to the following:

    i.    The parties agree that the following documents will not be searched or included in a privilege log:

    (a)    Communications exclusively between a party and its counsel;

      (b)     Work product created by counsel, or by an agent of counsel other than a party, after commencement of the action, or related to any other regulatory or agency proceeding; and

      (c)     Internal communications within (1) a law firm, (2) legal assistance organization, (3) governmental law office, or (4) a legal department of a corporation or another organization.

  ii.     All papers may be served on the opposing party by e-mail. For purposes of calculating the deadline to respond, e-mail service will be treated the same as hand-delivery;

  iii.     The parties will use a unified, sequential numbering system for all exhibits introduced in depositions.

  iv.     Any fees charged by an expert witness for responding to discovery, including time spent at depositions, shall be paid by the party who has retained the expert witness;

g.     Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties anticipate that the claims and defenses will involve some amount of electronically stored information. The parties have taken steps to preserve electronically stored information relevant to this case and will facilitate the discovery of such information and limit the associated discovery costs and delay. The parties will work together to avoid discovery disputes in this area. The parties currently have no other agreements regarding claims of privilege or of protection as trial-preparation materials after production of computer-generated records.

*[handwritten: Parties shall adhere to Sedona principles regarding electronic discovery disputes.]*

10

h.  Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties have engaged in settlement discussions and agree to continue such discussions.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a.  Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:

No modifications requested. *[handwritten: 10 depos + 25 rogs for π; 10 depos + 25 rogs for Δs Tomasini + RAJT; 10 depos + 25 rogs for Δs Madjan, V&T et al.]*

b.  Limitations which any party proposes on the length of depositions:

In accordance with Fed. R. Civ. P. 30(d)(1), the parties propose a deposition duration limited to seven (7) hours, unless a longer period is agreed to by the parties or ordered by the Court.

c.  Limitations which any party proposes on the number of requests for production and/or requests for admission. *[handwritten: 25 rfps + 25 rfas for π; 25 rfps + 25 rfas for Δs Tomasini + RAJT; 25 rfps + 25 rfas for Δs Madjan, V&T et al.]*

Each party does not propose more than twenty-five (25) requests for production *and* [handwritten] requests for admission upon another party, except, each party requests ~~additional~~ *unlimited* [handwritten] requests for admissions to be propounded upon another party, if necessary, relating solely to the genuineness and/or admissibility of any described document.

d.  Other Planning or Discovery Orders: ~~None.~~ *[handwritten: ① See Order #28 at p.2, section E; ② Parties to submit proposed FRE 502(d) ~~on Feb.~~ letter ~~March~~ 9, 2016]*

### 9. CASE PLAN AND SCHEDULE

a.  Deadline for Joinder of Parties and Amendment of Pleadings:

March 4, 2016

11

b. Discovery Cut-off:[*] The parties propose a fact discovery cut-off date of January 6, 2017. The parties propose an expert discovery cut-off date of March 3, 2017.

c. Dispositive Motion Deadline: The parties propose a dispositive motion deadline date of April 7, 2017.

d. Expert Witness Disclosure

1. Anticipated fields of expert testimony, if any:

    None at this time.

2. Limitations which the parties propose on the use or number of expert witnesses:

    ~~None.~~ 1 retained expert per group (π, Tomazin As, plus rebuttal experts other As)

3. The parties propose that they shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before January 16, 2017.

4. The parties propose that they shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~March 3,~~ February 17, 2017.

e. Identification of Persons to Be Deposed:

Plaintiff intends to depose these persons for the indicated estimated times:

  1. Defendant Ryan Tomazin—7 hours;
  2. Defendant Ryan Madigan—7 hours;
  3. Defendant Randell Vest—7 hours;
  4. Joe Madigan—4 hours;
  5. Swede Tomazin—4 hours;
  6. Robin Niehardt—3 hours;

12

[*] means deadline to complete discovery + deadline to make discovery motions

7. Derek Miller—3 hours;
8. Tyson Morgan—3 hours;
9. Sean Irvine—3 hours.

This list, however, is not exhaustive, and plaintiff reserves the right to modify this list throughout discovery and to cross-notice defendants' witnesses.

Defendants intend to depose the following persons for the indicated estimated times:

1. Defendant Ryan Tomazin—7 hours;
2. Defendant Ryan Madigan—7 hours;
3. Defendant Randell Vest—7 hours;
4. Joe Madigan—4 hours;
5. Swede Tomazin—4 hours;
6. Robin Niehardt—3 hours;
7. Derek Miller—3 hours;
8. Tyson Morgan—3 hours;
9. Sean Irvine—3 hours.

Investigation is ongoing as to further witnesses.

 f. Deadline for Interrogatories:

The parties propose that written Interrogatories must be served no later than ~~December 2,~~ *November 20* 2016.

 g. Deadline for Requests for Production of Documents and/or Admissions

The parties propose that requests for production of documents and requests for admissions must be served no later than ~~December 2,~~ *November 20* 2016.

## 10. DATES FOR FURTHER CONFERENCES

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

 a. Status conferences will be held in this case at the following dates and times:

*As needed.*

13

b.    A final pretrial conference will be held in this case on _____ at *a date to be determined by Chief Judge Krieger* o'clock \_\_\_\_m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.    Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:

None.

b.    Anticipated length of trial and whether trial is to the court or jury

Plaintiff anticipates a 10 day jury trial.

c.    Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building,103 Sheppard Drive, Durango, Colorado 81303-3439:

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(d). by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 26th day of January, 2016

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

APPROVED:

s/ Luke B. Marsh
Luke B. Marsh
Chief Trial Attorney
Sophia Siddiqui
Senior Trial Attorney
Commodity Futures Trading Commission,
Division of Enforcement
1155 21st Street, N.W.
Washington, D.C. 20581
Tel: (202) 418-5322 (Marsh)
Tel: (202) 418-6774 (Siddiqui)
Facsimile: (202) 418-5124
lmarsh@cftc.gov
ssiddiqui@cftc.gov
Counsel for Plaintiff
U.S. Commodity Futures Trading Commission


s/ Forrest W. Lewis
Forrest W. Lewis
FORREST W. LEWIS, P.C.
1019 8th Street, Suite 310
P.O. Box 677
Golden, Colorado 80402
Ph: (303) 279-3333
Fax: (303) 278-7691
flewispc@aol.com
Attorney for Defendants Ryan Tomazin and RAST Investor Group, LLC

15

s/ Michael J. Lewis
Michael J. Davis
BKN Murray, LLP
6795 E. Tennesse Ave., St. 330
Denver, CO 80224
Ph: (303) 758-5100
Fax: (303) 758-5055
mdavis@bknmurray.com
Attorney for R2 Capital Group, LLC, Defendants Madigan Enterprises, Inc., Ryan Madigan, Bulletproof Vest, Inc., and Randell Vest