**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
MAGISTRATE JUDGE KRISTEN L. MIX**

Civil Action No. 1:14-cv-02182-MSK-KLM

U.S. COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

R2 CAPITAL GROUP, LLC; RAST INVESTOR GROUP, LLC;
MADIGAN ENTERPRISES, INC.; BULLETPROOF VEST, INC.;
RYAN TOMAZIN; RYAN MADIGAN; and RANDELL A. VEST,

    Defendants.

**R2 CAPITAL GROUP, LLC, MADIGAN ENTERPRISES, INC. AND RYAN MADIGAN'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

R2 Capital Group, LLC, Madigan Enterprises, Inc. and Ryan Madigan (collectively, "Madigan Defendants"), by and through undersigned counsel, hereby submit their response to Plaintiff U.S. Commodity Futures Trading Commission's Motion for Attorneys' Fees and Costs, in support of which they state as follows:

**INTRODUCTION**

Plaintiff served written discovery on the Madigan Defendants on February 5, 2016, eighteen months after the case was originally filed.[1] At the time of filing its Complaint, Plaintiff already possessed a significant portion of the information and documents it sought from Madigan Defendants. See chart attached as Exhibit A to this Response. As described in Plaintiff's

---

[1] Despite significant delays that plagued this case through no fault of the Madigan Defendants, Plaintiff claimed that it had been prejudiced by Madigan Defendants' delayed discovery responses.

1

Declaration filed concurrently with its Complaint, in 2013, the National Futures Association (NFA) had conducted an examination of R2 Capital Group, LLC ("R2"), in which it gathered various records and information from the present defendants. (Doc. 6 at 5-7, 16-17.) NFA later provided its analysis and information to Plaintiff. (*Id.* at 5-7.) Based on the information defendants voluntarily provided to the NFA, Plaintiff gathered and subpoenaed additional records, including bank documents and transactions for the various defendants, records from R2's three investors, documents and statements from two futures commission merchants for accounts held by the Commercial Pool and R2, records of accounting services and paperwork, and publically available records pertaining to the corporate defendants and the relationship among the individual defendants and their holding companies. (*Id.*) Plaintiff's discovery requests sought overlaping records and information to that which was already in its possession, largely as a result of defendants' voluntary disclosures.[2]

In addition to objecting on the basis that Plaintiff already possessed the information it sought, the Madigan Defendants also objected to Plaintiff's discovery requests on the basis that they themselves did not have possession, custody or control over responsive information or documents due to the fact that Defendant Tomazin was exclusively in charge of R2's investment activities. (Doc. 74 ¶¶ 7, 20, 22; Doc. 76 ¶¶ 7, 20, 22, 25.) Despite holding an ownership interest, neither Mr. Madigan nor Madigan Enterprises, Inc. directly controlled, operated, or managed R2 Capital Group, LLC ("R2"). (*Id.*) Counsel for Madigan Defendants communicated this to Plaintiff's counsel during several attempts at early conferral. See emails

---

[2] Despite this fact, during the June 6, 2016, telephonic hearing, counsel for Plaintiff represented to the Court that "And we, to date, haven't received any documents from any of the defendants." (Doc. 99 at 6:22-23.) In the same hearing, the Court, stated to counsel for Madigan Defendants that "[w]ell, Mr. Davis, you're making a significant assumption, and that is that the FTC has documents that, you know, you think they're asking you to produce here," to which Plaintiff did not respond. (*Id.* at 9:16-19.)

attached as Exhibit B. Counsel for Madigan Defendants reiterated that the information was outside of the Madigan Defendants' possession, custody, and control during the Court's June 6, 2016, discovery hearing, at which time the Court ordered the Madigan Defendants to properly assert their objections in writing by June 20, 2016.

On June 20, 2016, the Madigan Defendants submitted amended responses to Plaintiff's first set of interrogatories asserting their objections. Although Madigan Defendants did not at the time submit a formal response to Plaintiff's request for documents, the amended responses to interrogatories included the following objection concerning documents:

> As to documents, Defendants are not in possession, custody or control of the documents because the documents were on a personal hard drive that crashed 5 years ago and all business documents were maintained on a company server that was in the possession of Ryan Tomazin who possesses all company records, and for which the Defendants will have to ask for [*sic*] in discovery.

See responses attached as Exhibit C. This applied to interrogatories 1 (seeking information pertaining to affirmative defenses) and 2 (denials), 4 (seeking a list of all defendants' financial accounts), and 7 (seeking an accounting of all transactions from R2 business accounts to any other defendant).[3] In addition, Madigan Defendants stated similar objections to interrogatories 5 (seeking additional financial account information), 8 (seeking information about an "unknown representative" listed on Defendant Vest's initial disclosures), and 9 (seeking information about all policies and procedures in place to deter "wrongdoing"). Many of those interrogatories significantly overlap with Plaintiff's requests for documents. Exhibit A.

---

[3] As counsel for Madigan Defendants stated during the June 6, 2016 telephonic hearing, Madigan Defendants intended to send their own discovery requests to Plaintiff and the remaining defendants. Madigan Defendants are eager to move past the present discovery dispute and to engage in productive litigation to resolve this case.

In late June, Mr. Marsh (counsel for Plaintiff) contacted Mr. Davis (Madigan Defendants' counsel) to complain that certain interrogatory responses remained deficient and that Madigan Defendants had still not produced responses to Plaintiff's discovery requests. On July 8, 2016, at the *exact* moment that Mr. Davis was emailing Mr. Marsh to set up a call, Mr. Marsh submitted a second notice to the Court concerning this discovery dispute. See emails attached as Exhibit D. Having received Mr. Davis' email, Mr. Marsh then discussed with Mr. Davis each interrogatory response to which Mr. Marsh objected, and Mr. Marsh provisionally agreed to Mr. Davis' proposed amendments, which Mr. Davis in turn agreed would be supplied by July 15, 2016. *Id.* On that basis, Mr. Marsh withdrew his second request for a discovery dispute hearing. *Id.* On Friday, July 15, 2016, as promised, the Madigan Defendants provided their second amended interrogatory responses, in line with the amendments discussed and provisionally agreed-to by Mr. Marsh. In keeping with the Madigan Defendants' initial objections, as restated during the July 8 phone call, the Madigan Defendants did not provide a formal response to Plaintiff's requests for production of documents.

On Monday, July 18, 2016, Mr. Marsh contacted Mr. Davis with a letter noting additional objections to the second amended interrogatory responses and a general objection to the lack of a response to Plaintiff's document requests. See documents attached as Exhibit E. The letter asked for a response by end of day July 19, 2016. *Id.* At the end of day July 19, 2016, Mr. Davis's associate emailed Mr. Marsh to acknowledge receipt of his letter and to request another day to respond. *Id.* At 9:50 a.m. on July 21, 2016, Mr. Marsh submitted a discovery dispute chart to this Court focusing on interrogatories 4 and 6 and all requests for production of documents. Later that day, Mr. Davis' associate again emailed Mr. Marsh acknowledging

receipt of his letter and stating that Madigan Defendants would prepare a response to Plaintiff's document requests by July 25, 2016.

On July 25, 2016, as promised, Madigan Defendants submitted a written response to Plaintiff's document requests and a set of responsive, non-privileged documents. See responses attached as Exhibit F. Consistent with Madigan Defendants' earlier objections, the response indicated that Ryan Madigan's laptop computer, together with its hard drive, had been destroyed several years ago, prior to the start of the case, and that Madigan Defendants believed many (if not all) of the responsive documents were in Plaintiff's possession or Defendant Tomazin's possession. Madigan Defendants also disclosed that responsive emails may have existed in an email account created for R2 activities, which Mr. Madigan believed had been operated by Yahoo!. By July 2016, Mr. Madigan could no longer access the account and believed it to be closed due to inactivity. *Id.* Mr. Madigan's first document production consisted of three hundred and seventy (370) pages of documents, consisting of the only categories of available documents in Madigan Defendants' possession: tax records for Mr. Madigan and Madigan Enterprises, Inc.; corporate documents for Madigan Enterprises, Inc. (the majority of which Plaintiff already possessed); and emails from Mr. Madigan's personal email account. *Id.* Madigan Defendants disclosed emails his personal Gmail account, despite the fact that those emails were all from late 2014 to the present. Madigan Defendants included a privilege log listing emails between various individual defendants, many with counsel, concerning the present case. Madigan Defendants also informed Plaintiff that they would produce a second set of documents on or before August 4, 2016.

On July 27, 2016, Mr. Marsh sent Mr. Davis another letter objecting to Madigan Defendants' responses to Plaintiff's document requests. See Exhibit G. The letter indicated that

5

Plaintiff intended to subpoena Yahoo! for Mr. Madigan's email records but that Plaintiff was aware that Yahoo! required the account holder's consent in order to release email records. The letter included a blank consent form and requested to know Mr. Madigan's position on providing consent to accompany Plaintiff's civil subpoena to Yahoo!. The letter also included objections to Plaintiff's responses to Plaintiff's document request number 5 (concerning communications between defendants) and 9 (concerning documents pertaining to all Madigan Defendants' financial accounts and assets). On August 1, 2016, Mr. Marsh and Mr. Davis's associate conferred by phone regarding the disputed discovery responses. During that phone call, the parties agreed to the following plan to round out Madigan Defendants' responses to Plaintiff's written discovery: Madigan Defendants would produce an additional set of emails from Mr. Madigan's Gmail account before August 4, 2016, and a final set thereafter (including a detailed privilege log once the responsive, nonprivileged documents were produced) to satisfy Plaintiff's request for production number 5; and Madigan Defendants would produce a complete list of Madigan Defendants' financial accounts from 2008 to present by the following week, which would satisfy Plaintiff's interrogatories 4 and 6, and request for production 9. Despite meaningful conferral, the parties could not agree about whether Madigan Defendants had waived their attorney-client privilege, or whether Mr. Madigan would provide consent to Plaintiff's subpoena of the Yahoo! records. On August 1, 2016, immediately following the phone call, Plaintiff submitted to this Court a supplemental discovery dispute chart highlighting Plaintiff's requests for production 5 and 9 (despite the agreement reached between the parties just minutes earlier). On August 3, 2016, as promised, Madigan Defendants produced a second set of documents consisting of an additional three hundred and six (306) pages of Mr. Madigan's personal emails.

On August 4, 2016, this Court held a hearing by phone during which it entertained Plaintiff's oral motion concerning interrogatories 4 and 6, requests for production 5 and 9, the waiver of attorney-client privilege, the question of Mr. Madigan's consent to Yahoo! to release records, and Plaintiff's request for attorney fees and costs. Despite Madigan Defendants' efforts to comply both with this Court's previous Order and with Plaintiff's reasonable discovery requests, this Court found that Madigan Defendants were guilty of "egregious misconduct" and granted each of Plaintiff's motions. (Doc. 119 at 30:5-8.) During the hearing, counsel for Madigan Defendants informed the Court that the parties had agreed to a plan for continued discovery that covered all of the disputed discovery requests. The Court itself expressed confusion over whether there was cause to compel Madigan Defendants to respond, when an agreement was in place. (*Id.* at 12:12-21; 20:16-21.) Plaintiff responded that it did not trust that Madigan Defendants would comply, despite the two previous document productions and amended interrogatory responses that had all occurred as promised. (*Id.* at 14:15-18.) In addition, Plaintiff asked the Court to compel Madigan Defendants to produce all financial documents, despite the fact that Plaintiff had agreed on August 1 not to seek that information and that in his letter of July 27, 2016, Mr. Marsh had without prompting proposed that a list of financial accounts would be sufficient. (*Id.* at 16:23-17:2; 20:22-23.) The Court granted Plaintiff's motion and ordered Madigan Defendants to comply by August 31, 2016. (*Id.*) Because the Court granted Plaintiff's motion to compel, it awarded Plaintiff its reasonable attorney fees and costs, under Fed. R. Civ. P. 37(a). (*Id.* at 25; Doc. 114.) [4]

---

[4] In addition, the Court ordered that Madigan Defendants had waived their attorney-client privilege by failing to timely assert objections and ordered Mr. Madigan to produce consent to Yahoo! to release his emails. Madigan Defendants are awaiting clarification from the Court concerning these portions of the Court's Order.

## SUMMARY OF ARGUMENT

The Court should deny Plaintiff's Motion for Attorneys' Fees and Costs or, alternatively, modify the award to a nominal sum, because Plaintiff has not met its burden to demonstrate that the time spent obtaining the disputed discovery was reasonably expended in light of the circumstances of this case. Specifically, Plaintiff should not have sought judicial intervention, given the clear indications that Madigan Defendants were attempting to produce what they reasonably could, together with the various agreements reached between the parties, which would have been sufficient to ensure that Madigan Defendants completed their responses. Moreover, Plaintiff's time-billing records do not meet the minimum standard necessary to support a finding of reasonableness, as they are vague, include fees which cannot be claimed under the Court's Order, and greatly overstate the number of hours required to do the work leading up to the August 4, 2016 hearing.

## ARGUMENT

### 1. *Legal Standards*

Federal Rule of Civil Procedure 37 requires a Court to award a reasonable expenses, including attorney's fees, to the prevailing movant on a motion to compel, subject to certain exceptions including (1) where the movant filed the motion prior to attempting to obtain the discovery without court action; (2) where the nondisclosure was substantially justified; or (3) where other circumstances render an award of attorney fees and costs unjust. Fed. R. Civ. P. 37(a)(5)(A). To determine a reasonable attorney's fee, the court in its discretion must first calculate a "lodestar figure" by multiplying a reasonable hourly rate by the hours reasonably expended. *Ind v. Colorado Department of Corrections*, 09-cv-0537-WJM-KLM (D. Colo., Dec. 2, 2014) (citing *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005)); *see also*

*Gisbrecht v. Barnhart*, 535 U.S. 789, 801-02 (2002) ("the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence").

> The first step in calculating the lodestar is the determination of the number of hours reasonably spent by counsel. The prevailing party bears the burden of proof in establishing this number by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. Additionally, the prevailing party must exercise billing judgment and make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. Where such an effort appears inadequate, the district court may reduce the award accordingly.

*Barnett v. Board of County Commissioners of County of Montrose*, 14-CV-1765-JAP-GPG (D. Colo., Dec. 14, 2015) (various cases cited) (internal citations omitted).

District courts may further "reduce a plaintiff's fee request when the request is based on time records that are rather sloppy and imprecise." *Segura v. Midland Credit Management, Inc.*, 12-cv-00830-PAB-BNB (D. Colo., Feb. 14, 2013) (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1284-85 (10th Cir. 1998)). Additional factors a Court may consider to "determine a fee's reasonableness include the complexity of the case, the number of reasonable strategies pursued, the responses necessitated by the maneuvering of the other side, any potential duplicative services, and whether the hours would normally be billed to a paying client." *Ind*, *supra* (citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)). Finally, the Court may decide to adjust the lodestar figure up or down "based on the particular circumstances of the case." *Barnett*, *supra* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986)); *see also Hensley*, 461 U.S. 424, 434 (1983).

### *2.    Plaintiff's Requested Time Is Not Reasonable In Light Of Madigan Defendants' Demonstrated Efforts And Agreements To Produce The Disputed Discovery.*

Prior to any court involvement in this matter, Mr. Davis communicated with Plaintiff's counsel, in writing, to state that his clients had very few documents, and he communicated by phone that Plaintiff's requests appeared unreasonable because Plaintiff was already in possession of most, if not all, of the documents. Exhibit B. During the June 6, 2016, telephonic discovery hearing, Mr. Davis reiterated Madigan Defendants' objections, and, in line with the Court's order, Madigan Defendants supplemented their Interrogatory Responses on June 20, 2016 to raise the objections formally, including stating objections to Plaintiff's requests for documents. When Plaintiff again complained about the amended responses, Madigan Defendants meaningfully conferred with Plaintiff's counsel on July 8, 2016, and attempted to address the new concerns. At several times during July, Plaintiff became impatient because counsel for Madigan Defendants did not meet an arbitrary deadline Plaintiff imposed. But at no point did Madigan Defendants completely disregard the communications or requests of Plaintiff. . Indeed, Madigan Defendants consistently met their own deadlines. Madigan Defendants promised Plaintiff they would provide second amended interrogatory responses on July 15, 2016; they did. Madigan Defendants promised Plaintiff they would provide a first set of documents together with a response to written document requests on July 25, 2016; they did. Madigan Defendants promised they would supplement the document production before August 4, 2016; they did. Plaintiff's statement during the August hearing that it did not believe that Madigan Defendants would produce documents as agreed by the parties was without merit.

As the above background demonstrates, by the August 4, 2016 hearing, Madigan Defendants were making demonstrated progress providing the requested discovery to Plaintiff, despite continuing to raise reasonable objections to certain requests. Plaintiff therefore should not have made an oral motion to compel on August 4, 2016. By August 1, 2016, the parties had

an agreement in place that addressed every disputed interrogatory and request for production. Nevertheless, despite meaningful conferral that had in fact generated a mutually-agreed-upon result, Plaintiff pushed forward with a motion to compel responses to the four discovery requests, including documents it had already agreed to forego, i.e. financial account documents in response to document request 9. In the end, Plaintiff's actions, for which it now seeks fees, rendered the meaningful conferral that took place on August 1, 2016, a nullity.

In addition, Plaintiff's Motion overstates its level of success at the August hearing. Contrary to Plaintiff's assertion, Plaintiff's did not achieve success by raising an oral motion on issues that had already been determined by agreement of the parties. The Court ordered Madigan Defendants to provide the written discovery by August 31, 2016. Madigan Defendants had already indicated they would provide discovery prior to that deadline. Plaintiff's only tangible success throughout this dispute was the Court's Order that enabled Plaintiff to obtain access to emails, which are either (1) privileged, or (2) held by Yahoo!, to which Madigan Defendants do not have access. The Court awarded those as sanctions against Madigan Defendants, despite Plaintiff's own admission that Madigan Defendants *may be correct* that they could not be compelled to consent to access to the Yahoo account. (Doc. 119 at 16: 1-2.) Plaintiff's counsel should not be doubly rewarded –with the documents as well as attorney fees—for seeking access to records it knew or should have known were not available to it under prevailing federal law.[5]

---

[5] Under the Stored Communications Act (SCA), 18 U.S.C. §§ 2701 *et seq.*, an entity such as Yahoo! providing an "electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service. . . ." 18 U.S.C. § 2702(a)(1); *Bower v. Bower*, 808 F.Supp.2d 348, 349 (D. Mass 2011) (stating that Yahoo! is an electronic communications service subject to the SCA). 18 U.S.C. § 2702(b) contains a number of exceptions to this rule, but as several courts have recognized there is no exception for civil subpoenas. *Mintz v. Mark Bartelstein & Associates, Inc.*, 885 F.Supp.2d 987, 992 (C.D. Cal. 2012) (and cases cited); *Bower*, 808 F.Supp.2d at 350 (stating that, under the SCA, governmental entities may require the disclosure of the stored communications in the context of ongoing criminal investigations, but not through civil subpoenas).

For the foregoing reasons, Plaintiff has not met its burden to demonstrate that the attorney time spent obtaining the disputed discovery was reasonable in light of the circumstances of this case, and the lodestar calculation should be adjusted downward accordingly.

### 3. *Plaintiff's Counsel Has Provided Sloppy And Imprecise Time-Billing Records That Do Not Accurately Identify The Time Spent Obtaining Answers To Its Discovery Requests.*

In order to support its requested fees, Plaintiff provides documentation aimed at showing the total hours expended by each attorney on relevant matters, which it claims is 61.75 for Mr. Marsh, 26.25 for Ms. Siddiqui and 20.50 for Ms. Karst.[6] The total number of requested hours is based on a time-billing system in which Plaintiff's counsel have recorded blocks of time per day dedicated to a variety of tasks, rather than recording each specific task under its own entry. See chart attached as Exhibit H. In some cases, the attorneys have listed a number of individual tasks under one "block" but have not identified how much time was spent on each task. For example, the majority of Ms. Karst's time entries include a record of several tasks related to the present case and a single record of the total time spent that day, i.e.:

| Date | Timesheet Description | Original Time (Hr) |
| --- | --- | --- |
| 08/01/16 | Confer with L. Marsh re ongoing discovery disputes with Madigan Defendants; confer with E-Law re uploading of recent production; review materials in preparation for upcoming hearing. | 6 |

In other cases, the attorneys have only vaguely described the general activity without specifying individual tasks performed, as in a number of the entries by Mr. Marsh and Ms. Siddiqui similar to the following entry by Mr. Marsh:

---

[6] Plaintiff has requested $39,475.00 in attorney fees and an additional $232.35 in costs for a total of $39,707.35.

| Date | Timesheet Description | Original Time (Hr) |
|---|---|---|
| 07/18/16 | discovery dispute | 3.5 |

It appears that some effort has been made by Plaintiff's counsel to recreate the basis for each time entry, resulting in additional detail being added that is not included in the original time entry, such as, for example, the notes attached to the same entry by Mr. Marsh:

| Date | Timesheet Description | Original Time (Hr) | Requested Time (Hr) | Notes |
|---|---|---|---|---|
| 07/18/16 | discovery dispute | 3.5 | 2.25 | Time reduced in conjunction with matter not related to discovery dispute; time reduced due to possible redundant time billed. Time billed limited to time spent for preparation of 07/18/16 letter to Davis. |

However, there is no documentation provided to support the new detail added to the time entry, or the precise basis for the new, discounted time. Further complicating matters is the fact that several of the original timeslip entries have been redacted in part, so neither Madigan Defendants nor the Court may conclude whether the discounted time allotted to the present discovery dispute is accurate vis-à-vis the remaining tasks performed that day. For example, Ms. Karst's actual time entry from August 1, 2016 reads as follows:

| Date | Timesheet Description | Original Time (Hr) | Requested Time (Hr) | Notes |
|---|---|---|---|---|
| 08/01/16 | ▇▇▇▇ Confer with L. Marsh re ongoing discovery disputes with Madigan | 6 | 2.25 | Time reduced in conjunction with matter not related to discovery dispute; time reduced due to |

13

| | | | | |
|---|---|---|---|---|
| | Defendants; confer with E-Law re uploading of recent production; review materials in preparation for upcoming hearing. | | | possible redundant time billed. |

Thus, there is simply no way to evaluate whether the "requested time" accurately reflects time spent on tasks directly related to the present discovery dispute. In short, Plaintiff has not met its burden to establish the lodestar amount by "submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Barnett*, *supra*.

Similarly sloppy and imprecise records have formed the basis for a rejection of fees or reduction of fees in this jurisdiction. *See, e.g., BP Pipelines (N. Am.) Inc. v. C.D. Brown Constr., Inc.,* 473 F.Appx. 818, 835 (10th Cir. 2012) ("The decision whether block billing indicates an unreasonable claim should remain with the district court who should be allowed to exercise its discretion accordingly."); *Nero v. American Family Mutual Insurance Co*., 11-cv-02717-PAB-MJW (D. Colo. Sep. 23, 2013) ("[A" trial court retains discretion to reduce the hours billed based on block billing if the court is unable to determine whether the amount of time spent on various tasks was reasonable."); *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc*., 11-cv-01611-MSK-CBS (D. Colo. March 27, 2014) (stating that the court will "not require Western to reimburse fees and costs that lack sufficient description or particularity."); *Watson v. Dillon Companies, Inc*., 08-cv-00091-WYD-CBS (D. Colo. Aug. 28, 2013) ("While I find the first two arguments for a reduction to be unsupported by controlling authority applied to this record, I do find merit in Defendants' argument that the fee request should be reduced due to duplication and excessively vague billing entries."); *Predator International, Inc., supra* ("The

14

Court will deny fees for the following amounts of time: (1) time spent on tasks that are not ordinarily billable to a client, namely, electronically filing documents, (2) time spent researching or writing about 28 U.S.C. § 1927 since the Court is not awarding sanctions pursuant to that statute, (3) time that is "block billed," which prevents the Court from determining whether the time spent was reasonable.") (citations omitted)); *Hitchens v. Thompson National Properties, LLC*, 12-cv-02367-LTB-BNB (D. Colo. May 29, 2014) ("Turning to the hours billed by the attorneys on the case, I find that the time was billed in blocks in which there are several activities combined, making it impossible to determine how much time was allotted to each activity.").

In addition to a general failure to provide accurate, precise billing entries, Plaintiff has requested payment of fees not reasonably incurred in its attempts to obtain discovery responses from Madigan Defendants. (Doc. 119 at 25:21-24. The Court awarded Plaintiff "its reasonable attorney's fees and costs incurred in the course of these last six months to attempt to obtain answers to its written discovery.")  Plaintiff is not entitled to fees for time that was spent after the hearing date of August 4, 2016.  This would include the following list of entries:

| Date | Attorney | Rate (in dollars) | Requested Time (Hr) | Total By Entry (in dollars) |
|---:|---|---:|---:|---:|
| 8/5/2016 | L Marsh | 450 | 3 | 1350 |
| 8/8/2016 | L Marsh | 450 | 4.25 | 1912.5 |
| 8/9/2016 | D Karst | 250 | 1.25 | 312.5 |
| 8/9/2016 | L Marsh | 450 | 5.25 | 2362.5 |
| 8/10/2016 | D Karst | 250 | 1.25 | 312.5 |
| 8/10/2016 | L Marsh | 450 | 4.75 | 2137.5 |
| 8/11/2016 | D Karst | 250 | 1.25 | 312.5 |
| 8/11/2016 | L Marsh | 450 | 1.75 | 787.5 |
| 8/12/2016 | L Marsh | 450 | 2.25 | 1012.5 |
| 8/17/2016 | L Marsh | 450 | 1.25 | 562.5 |
| **TOTAL:** | | | | **11062.5** |

A majority of that time is related to preparation of the present motion, some of which is purely administrative and would not be recoverable even if it were related to Plaintiff's attempt to

15

obtain discovery responses. *See Andalam v. Trizetto Group,* Civil Action 12-cv-01679-WYD-MJW (D. Colo., Nov. 7, 2013) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("The Supreme Court has found non-compensable 'purely clerical or secretarial tasks [which] should not be billed at a paralegal rate, regardless of who performs them.'"). In addition, these time entries include preparation of Plaintiff's response to Madigan Defendants' unrelated Motion for Clarification on the Court's August 4, 2016 Order. In sum, nearly one third of Plaintiff's requested time should not be included in the lodestar calculation.

However, the Court should not simply accept Plaintiff's calculations for the remaining time as they are unsupported and imprecise, as indicated above. In addition, $39,707.35 is clearly excessive for the work and outcome generated. Based on a review of Plaintiff's time entries, Plaintiff's prior submissions to the Court, and Madigan Defendants' counsel's own records, Plaintiff's counsel's work on the disputed discovery can be summarized as follows:

a. Submission of nine **(9)** (mostly brief) emails to counsel for Madigan Defendants concerning the requested discovery; and receipt of nine **(9)** (mostly brief) emails from counsel for Madigan Defendants concerning the requested discovery.[7]

b. Various brief phone calls and voicemails with counsel for Madigan Defendants; one **(1)** call lasting several minutes on July 8, 2016; and one **(1)** call lasting roughly an hour on August 1, 2016.

c. Review of five **(5)** written responses to Plaintiff's discovery requests, including Madigan Defendants' first responses to interrogatories, amended responses to interrogatories, second amended responses; first responses to requests for production, and amended responses to requests for production.

d. Research and preparation of four **(4)** letters to counsel for Madigan Defendants: May 9, 2016; June 23, 2016; July 18, 2016; and July 17, 2016 (recycling many of the same legal citations, case history, and arguments; 15 pages in total).

e. Preparation of four **(4)** discovery dispute charts and email submissions to the Court (despite the fact the Court did not require submission of the same and, in fact, did not

---

[7] Does not include emails simply enclosing letters or other attachments.

      take into Account Plaintiff or Madigan Defendants' written submissions prior to the August 4, 2016 hearing).

    f. Preparation for and attendance at two **(2)** telephonic hearings (19 minutes and 44 minutes respectively).

See all documents compiled as Exhibit I.

The reasonable number of total hours for this work cannot be the 108.5 claimed by Plaintiff —82.25 if you do not include the hours worked after the August 4, 2016 hearing. Understanding that attorneys do not work in a vacuum and that legal work naturally involves some amount of backtracking and redundancy, Madigan Defendants propose that approximately 37.5 hours is a more reasonable number.[8] Multiplying that number to the attorney's hourly rates in the same proportion included in the Motion equates to a lodestar of $13,650.[9] As discussed above, any lodestar amount should be significantly and further reduced to account for the fact that Madigan Defendants were indeed attempting to comply with Plaintiff's discovery requests, despite raising reasonable objections, and had meaningfully conferred and reached an agreement with Plaintiff that rendered Plaintiff's oral motion to compel unnecessary and wasteful of parties' and the Court's time.

## CONCLUSION

---

[8] This is based on the following:
    a. 18 emails (the majority of which were brief): 3 hours.
    b. Phone calls and voicemails: 1.5 hours.
    c. Review of Madigan Defendant's discovery requests: 8 hours.
    d. Letters to counsel for Madigan Defendants: 15 hours.
    e. Discovery dispute charts: 8 hours.
    f. Telephonic hearings and prep: 2 hours.

[9] Mr. Marsh's 61.75 hours account for 57% of the total, and Ms. Siddiqui's and Ms. Karst's time together account for 43% of the total hours. Madigan Defendants do not dispute that the hourly rates of $450 for Mr. Marsh and $250 for Ms. Siddiqui and Ms. Karst are appropriate hourly rates for Plaintiff's counsel.

WHEREFORE, Madigan Defendants pray that the Court will deny Plaintiff's Motion for Attorneys' Fees and Costs or, alternatively, modify the award to a nominal sum in light of the reasons stated herein.

Dated: August 25, 2016.               Respectfully submitted:

*s/Michael J. Davis*
By: _____
Michael J. Davis
BKN Murray, LLP
6795 E. Tennessee Ave., Ste. 330
Denver, CO 80224
P: (720) 361-6036
F: (303) 758-5055
E: mdavis@bknmurray.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 25, 2016 a copy of the foregoing R2 CAPITAL GROUP, LLC, MADIGAN ENTERPRISES, INC. AND RYAN MADIGAN'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS was filed and served electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

Dated: August 25, 2016.   Respectfully submitted:

             *s/Michael J. Davis*
            By: _____
            Michael J. Davis
            BKN Murray, LLP
            6795 E. Tennessee Ave., Ste. 330
            Denver, CO 80224
            P: (720) 361-6036
            F: (303) 758-5055
            E: mdavis@bknmurray.com