IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02182-MSK-KLM

US COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

R2 CAPITAL GROUP LLC,
RAST INVESTOR GROUP, LLC,
MADIGAN ENTERPRISES, INC.,
BULLETPROOF VEST, INC.,
RYAN TOMAZIN,
RYAN MADIGAN, and
RANDALL A. VEST,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on the **Motion for Clarification** [#117][1] (the "Motion"), filed by Defendants R2 Capital Group, LLC, Madigan Enterprises, Inc., and Ryan Madigan (collectively, the "Madigan Defendants"). Plaintiff filed a Response [#120]. No Reply was filed. The Motion is **GRANTED**, and the Court clarifies as follows:

    On August 4, 2016, a Discovery Hearing was held regarding a variety of oral discovery motions presented by Plaintiff. *See* [#114, #119]. The present Motion [#117] seeks clarification of two parts of the Court's Orders [#114] entered at that hearing.

---

[1] "[#117]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

**A.	The Yahoo Account E-mails**

First, the Madigan Defendants seek clarification on the Court's following Order: "Plaintiff's oral Motion to Compel Defendant Ryan Madigan to produce emails from his Yahoo Account is **GRANTED**. If necessary, Defendant Ryan Madigan shall execute a consent to require Yahoo to disclose his emails from that account . . . ." *See* [#114] at 2. The Madigan Defendants state:

> It is unclear to Mr. Madigan and the other Madigan Defendants whether the Court requires Ryan Madigan to consent to Yahoo disclosing his emails to him(self), or to consent to Yahoo releasing the emails subject to Plaintiff's civil subpoena. Therefore, in order to comply with the Court's Order and/or to move for reconsideration, Mr. Madigan and the other Madigan Defendants respectfully request clarification on whether Mr. Madigan, who is unable to obtain access to the account directly, is required to provide a separate consent to Yahoo to disclose any existing emails back to him or is required to consent to a subpoena of his emails by Plaintiff.

*Motion* [#117] at 3. Ultimately, therefore, the Madigan Defendants ask: "Does the Court require Ryan Madigan to consent to Yahoo disclosing his emails to him(self) or to Yahoo releasing the emails subject to Plaintiff's civil subpoena?" *Id.* at 4. Plaintiff responds:

> Defendant Ryan Madigan contends there are two types of consent forms: one to obtain his own emails for himself, and one to consent to release of emails in response to a third party subpoena. The purpose of the Order is to obtain the emails—therefore, Defendant Ryan Madigan should be compelled to execute a consent form on behalf of himself and the other Defendants authorizing Yahoo to disclose and release emails from Ryan Madigan's Yahoo account, including any emails previously deleted or archived.

*Response* [#120] at 3 (internal citation omitted).

Based on the Madigan Defendants' conduct which had been previously discussed at the hearing, the Court discussed the issue of production of emails from Defendant Ryan Madigan's Yahoo account:

> [T]his amounts to, in my view, what could be viewed as spoliation. . . . [T]he reason why this was a relatively recent request, . . . is because you only recently made the plaintiff aware that your client had a Yahoo account. And your client is contending that servers were damaged or that the account was somehow shut down and he no longer has access to it. This could have been characterized as a spoliation-related request.
>
> But furthermore, whether it's characterized as spoliation or not, you have disobeyed a discovery order that was very clearly entered by the Court on June 20th of 2016. Rule 37(b)(2) of the Federal Rules of Civil Procedure says as follows: If a party or a party's officer, director, or managing agent fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (1) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (3) striking pleadings in whole or in part; (4) staying further proceedings until the order is obeyed; (5) dismissing the action or proceeding in whole or in part; (6) rendering a default judgment against the disobedient party; or (7) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> I submit to you that the sanctions that are permitted by Rule 37(b)(2) are much more severe than the sanction that the Court is imposing here. The sanction that I am choosing to impose here is to require your client to execute a consent so that emails of his, emails which he admits existed at one time and which may be relevant to this action may be produced by a third-party provider. They're obviously available. They're not available directly to your client, but they're available through the stroke of a pen by him. And as a sanction for your client's repeated failure to comply with my discovery order, that is what I am ordering. . . .
>
> I think that I'm entitled to sanction you for disobeying a Court order. I think that the sanctions that are listed in 37(b)(2)(A) are representative sanctions. They're not every sanction the Court can impose. [T]he rule says, [t]he sanctions may include the following. I am devising my own sanction here in addition to the attorneys fees and costs. And the sanction that I am devising is that your client has to turn over the Yahoo emails. And the way that he has to get that done is he has to consent to have the Yahoo people provide the emails for the relevant time period.

[#119] at 26-30.

The Madigan Defendants quibble over a non-issue. The precise method for complying with the Order was not specified by the Court, because Defendant Ryan Madigan was simply required to comply in whatever way he deemed most appropriate. At the hearing, counsel stated his opinion that "it's very clear that the law states that there is no right to access records with a civil subpoena." [#119] at 26. Because it was unnecessary to do so, the Court made no ruling on the argument that the Stored Communications Act bars access to the relevant electronic records when sought by a civil subpoena. *See* [#119] at 26. Given that the Court's Order was simply to produce the records to Plaintiff, given that the Court did not direct Defendant Ryan Madigan to execute that Order in any particular way, and given that the Madigan Defendants believe that such records may not be obtained through a civil subpoena, then, obviously, they should obtain the records themselves, executing a consent form if necessary, and then provide those documents to Plaintiff in order to comply with the Court's sanctions Order. This issue should not have required the filing of a motion for clarification. To the extent he has not yet done so,

IT IS HEREBY **ORDERED** that Defendant Ryan Madigan shall initiate his request with Yahoo to obtain his e-mails and, if necessary, shall execute a consent to require Yahoo to disclose his emails from that account for the relevant time period, **no later than October 11, 2016**.

**B.    Work Product Privilege**

Second, the Madigan Defendants seeks clarification on the Court's following Order: "Plaintiff's oral Motion regarding waiver of the attorney-client privilege by the Madigan

Defendants is **GRANTED**. Madigan Defendants shall produce the documents listed on the privilege log . . . ." *See* [#114] at 2. The Madigan Defendants state:

> It is unclear to the Madigan Defendants whether the Court requires them to produce documents protected only by the work product privilege, and whether this waiver includes documents found in the future to be privileged. Thus, in order to comply with the Court's Order and/or to move for reconsideration, Madigan Defendants respectfully request clarification regarding whether the waiver discussed in the Court's recent Order pertains to documents on the privilege log protected by the work product doctrine but not the attorney-client privilege. In addition, the Madigan Defendants respectfully request clarification regarding whether the waiver stated in the Court's August 4, 2016 Order pertains to documents not included on the privilege log but discovered in the future to be protected by the work product doctrine or attorney client privilege, as well as other objections.

*Motion* [#117] at 3. Ultimately, therefore, the Madigan Defendants ask: "Does this waiver pertain only to attorney-client privilege, rather than work product, and is it a waiver of future objections including documents found in the future to be privileged?" *Id.* at 4.

At the hearing, Plaintiff's counsel stated, "[W]e would like an order compelling them to produce their email accounts. They've also withheld several emails on the basis of attorney-client privilege and work-product privileges. And those emails – those objections . . . , in our opinion, are waived. Those objections are waived based upon their tardy responses." [#119] at 16. In summarizing Plaintiff's numerous arguments raised at the hearing, the Court stated in relevant part: "You want me to rule that the attorney-client privilege asserted on the privilege log has been waived and, therefore, the documents reflected on the privilege log must also be produced. . . . Is my list now complete?" *Id.* Plaintiff's counsel made one unrelated correction to the Court's summary of Plaintiff's argument but did not correct the list with a reminder about work product privilege. *Id.* at 16-17.

However, regardless of this miscommunication, the Court acknowledges Plaintiff's prior statement explicitly raising the issue of work product privilege. [#119] at 16. The Court also acknowledges that Plaintiff's argument with respect to attorney-client privilege was identical to its argument regarding work product privilege, and the Court's conclusion applies equally to both: "The defendant is also deemed to have waived the attorney-client privilege with respect to the attorney-client privilege listed on the privilege log. That privilege was asserted in an untimely way." [#119] at 25. Accordingly, because the Madigan Defendants' assertion of privilege in the privilege log was untimely as to all documents in the privilege log, including those assertedly protected by work product privilege, the Court clarifies its prior Order as follows:

IT IS FURTHER **ORDERED** that the Madigan Defendants shall produce **ALL** documents listed on the privilege log, whether asserted to be protected by attorney-client privilege, work product privilege, or both, on the basis that such assertions of privilege were untimely. The Court may not issue an advisory opinion regarding any documents "not included on the privilege log but discovered in the future to be protected," and therefore declines to do so.

IT IS FURTHER **ORDERED** that, to the extent the Madigan Defendants have not yet done so, they shall produce the documents responsive to Plaintiff's Request for Production #5 and listed on the privilege log **no later than October 11, 2016**.

Dated: October 4, 2016

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge