IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 14-CV-02182-MSK-KLM

UNITED STATES COMMODITY FUTURES TRADING COMMISSION,

        Plaintiff,

v.

R2 CAPITAL GROUP, LLC,
RAST INVESTOR GROUP, LLC,
MADIGAN ENTERPRISES, INC.,
BULLETPROOF VEST, INC.,
RYAN TOMAZIN,
RYAN MADIGAN, and
RANDELL A. VEST,

        Defendants.

_____

PROPOSED
**CONSENT ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE
RELIEF AGAINST RYAN TOMAZIN AND RAST INVESTOR GROUP, LLC**
_____

On November 4, 2014, Plaintiff  United States Commodity Futures Trading Commission

("Commission" or "CFTC") filed its First Amended Complaint ("Complaint") against Ryan

Tomazin ("Tomazin"), Ryan Madigan ("Madigan"), Randell A. Vest ("Vest"), RAST Investor

Group, LLC ("RAST"), Madigan Enterprises, Inc. ("Madigan Enterprises"), Bulletproof Vest,

Inc. ("Bulletproof Vest"), and their company, R2 Capital Group LLC ("R2 Capital")

(collectively, "Defendants") seeking injunctive and other equitable relief, as well as the

imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§

1 (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R.

§ 1.1 *et seq.* (2016) **(#38)**.

On December 2, 2014, Tomazin was charged in a two-count indictment in the Southern District of New York, alleging securities fraud and commodities fraud in connection with Tomazin's fraudulent trading scheme. *United States v. Tomazin*, No. 1:14-cr-00790 (S.D.N.Y. filed Dec. 2, 2014). The instant case was stayed by this Court on January 6, 2015, pending the outcome of Tomazin's related criminal case in New York (**#50**). On July 30, 2015, Tomazin pleaded guilty to one count of securities fraud and one count of commodities fraud, and he was sentenced on October 13, 2015. The Court lifted the stay in this case on November 16, 2015 (**#64**).

## I. CONSENTS AND AGREEMENTS

To effect partial settlement of this action against Defendants Tomazin and RAST, without a trial on the merits or any further judicial proceedings, Defendants Tomazin and RAST:

1.      Consent to the entry of this Consent Order for Permanent Injunction and Other Relief Against Defendants Tomazin and RAST ("Consent Order");

2.      Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledge service of the summons and Complaint;

4.      Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5.      Admit the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6. Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7. Waive:

(a) Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1-148.30 (2016), relating to, or arising from, this action;

(b) Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from the Consent Order.

8. Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if they now or in the future reside outside the jurisdiction of this Court;

9. Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

10.	Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendants Tomazin and RAST's:  (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  Defendants Tomazin and RAST shall undertake all steps necessary to ensure that all of their agents or employees under their authority or control understand and comply with this agreement;

11.	By consenting to the entry of this Consent Order, Defendants Tomazin and RAST admit to all of the Findings of Fact in this Consent Order and all of the allegations in the Complaint.

12.	In *U.S. v. Tomazin*, No. 1:14-cr-00790 (S.D.N.Y. filed Dec. 2, 2014), the related criminal action concerning the same facts alleged herein, Defendant Tomazin pleaded guilty to: securities fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. 240.10b-5 and 18 U.S.C. § 2 (Count 1); and commodities fraud in violation of 7 U.S.C. §§ 6*o*(1) and 13(a)(2), and 18 U.S.C. § 2 (Count 2). In connection with that plea, Defendant Tomazin admitted the facts set out in the transcript of his plea allocution, a copy of which is attached as Exhibit A to this Order, and those same facts are admitted as if set forth in this Order.

13.	Agree to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 82 of Part V. of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against Defendants Tomazin or RAST, whether inside or outside the United States;

14.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants Tomazin and RAST in any other proceeding;

15.     Defendants Tomazin and RAST consent to pay restitution, plus post-judgment interest, in an amount of $1,286,787.50, jointly and severally between all Defendants, if any, found liable in the above-captioned action, less  amounts paid in the criminal action, as described in more detail in Section IV.A. below.  In the  event other Defendants in this matter are ordered to pay restitution, this restitution order shall be  joint and several with any such order against such other Defendants.

16.     Defendants Tomazin and RAST consent to pay a civil monetary penalty, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court.

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

17.     The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.  The Findings and Conclusions in this Consent Order are not binding on any other party to this action.  Nothing in the Findings and Conclusions in this Consent Order may be used to establish, reduce, increase, eliminate or in any way affect the liability of any of the remaining Defendants in this action who are not parties to this Consent Order.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.     Findings of Fact**

   **1)     The Parties to this Consent Order**

   18.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 – 190.10 (2016).

   19.     Defendant Ryan Tomazin resided in Denver, Colorado and then Stamford, Connecticut, during the relevant period.[1]  In 2008, Tomazin formed R2 Capital.  During the relevant period, Tomazin was also the owner, manager and principal of Defendant RAST, Tomazin's alter ego and holding company.  Tomazin has never been registered with the Commission in any capacity.

   20.     Defendant RAST Investor Group, LLC, is a limited liability company formed in 2008 by Defendant Tomazin in Denver, Colorado, owned and operated by Defendant Tomazin, and through which Defendant Tomazin co-owned, co-controlled and co-operated Defendant R2 Capital.

   **3)     Background**

   21.     During the relevant period, Defendants Tomazin and RAST, on behalf of their company, R2 Capital, fraudulently solicited and accepted approximately $2.4 million from at least four (4) individuals to participate in a commodity pool,[2] known as R2 Commercial Capital

---

[1] The relevant period of this action is from at least December 2009 through at least December 2015.

[2] A "commodity pool operator" ("CPO") means any person—
   Engaged in a business that is the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions the

Partners I L.P. (the "Commercial Pool"), to trade foreign exchange ("forex") and, later, futures contracts, including E-mini S&P 500 futures contracts and E-mini Dow futures contracts.

22. Although Defendants Tomazin and RAST, on behalf of R2 Capital, placed $2.2 million of the pool participants' funds in a trading account, Defendants Tomazin and RAST lost approximately $1.2 million through trading, and misappropriated the remaining $1.2 million for their personal use and unauthorized expenditures.

23. In soliciting potential and existing pool participants, Defendants Tomazin and RAST, on behalf of R2 Capital, falsely and fraudulently represented to pool participants that the pool was continuing to trade forex, when in truth the pool had ceased trading forex and was instead trading in financial futures and other securities products. Defendants Tomazin and RAST, on behalf of R2 Capital, also knowingly or recklessly distributed false account statements and performance reports to pool participants that represented that the Commercial Pool was earning profits during a period where no trading occurred, and while Defendants Tomazin and RAST were misappropriating pool funds.

24. During the relevant period, Defendants Tomazin, Vest, and Madigan equally owned, and jointly controlled, the operations of R2 Capital through RAST, Madigan Enterprises and Bulletproof Vest. Tomazin and Madigan handled R2 Capital's day-to-day operations, including managing the accounting, reporting and investor relations responsibilities. Tomazin is

---

sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
(I)     Commodity for future delivery, security futures product, or swap . . .
(II)    Who is registered with the Commission as a commodity pool operator.

Section 1a(11) of the Act, 7 U.S.C. §1a(11) (2012).

also a signatory on each of R2 Capital's and the Commercial Pool's bank accounts, including an account used to accept pool participant deposits.

25.     On or about November 10, 2008, Defendant Tomazin filed R2 Capital's Articles of Organization with the Colorado Secretary of State, identifying Tomazin as R2 Capital's registered agent and Tomazin's home address in Denver, Colorado as its mailing address.  On September 18, 2009, Tomazin filed a Certificate of Limited Partnership for the Commercial Pool, identifying Tomazin as the Commercial Pool's registered agent, Tomazin's home address in Denver, Colorado, as its mailing address, and R2 Capital as the Commercial Pool's General Partner.

26.     In October 2013, the National Futures Association ("NFA") began an investigation of R2 Capital, a registered CPO, and NFA Member Vest, resulting in a December 20, 2013 Member Responsibility Action ("MRA") by the NFA against R2 Capital and Vest.  As a result of its investigation, the NFA deemed the MRA "necessary to protect investors in commodity pools and other investment vehicles controlled by R2 Capital and Vest . . . because of their failure to cooperate with the NFA in its examination and investigation of R2 Capital by failing to produce books, records and other information from them."  In its MRA, the NFA found that "R2 Capital, Vest and Tomazin have provided NFA with misleading, incomplete and conflicting information regarding the firm's operation, specifically in connection with the Commercial Pool, and [that the NFA] cannot account for a significant portion of the pool's assets, which appear to have been disbursed through so-called loans and other payouts to the owners of the firm."  *Id.*  Specifically, the NFA determined that "Vest, Tomazin and Madigan may have converted pool assets totaling more than $1 million for their own personal use, through numerous payments to themselves or their holding companies" and required Defendants R2 Capital and Vest to immediately provide

copies of the MRA to all pool participants. In contravention of the terms of the MRA, R2 Capital and Vest did not provide pool participants with copies of the MRA and disbursed or transferred funds from the Commercial Pool's trading account and pool accounts without prior NFA approval.

### 4) Defendants Tomazin's and RAST's Fraudulent Statements and Omissions

27.     During the relevant period, Defendants Tomazin and RAST, on behalf of R2 Capital, solicited approximately $2.4 million from at least four pool participants for the purpose of trading forex through the Commercial Pool. These funds were deposited directly into either the Commercial Pool or R2 Capital bank accounts. Defendants Tomazin and RAST, on behalf of R2 Capital, induced one or more prospective pool participants to participate in the Commercial Pool by providing them with a "Confidential Information Memorandum," a "Limited Partnership Agreement," and a "Subscription Agreement." These documents falsely and fraudulently represented the following:

a.     R2 Capital would receive a management fee of 50% of the profits earned by the Commercial Pool, paid only if the Commercial Pool earned profits. The remaining profits would be divided on a pro rata basis between the pool participants;

b.     All pool participant funds would be deposited directly into the Commercial Pool's bank account, and there would be no commingling of funds between the Commercial Pool and R2 Capital, except for the payment of bills or disbursements on behalf of the Commercial Pool;

c.      There would be no loans between the Commercial Pool and any other entities

controlled by R2 Capital or any person or entity directly or indirectly controlling,

controlled by or under common control of R2 Capital;

d.      The Commercial Pool would be subject to an annual third party audit;

e.      R2 Capital would maintain complete and accurate books and records of all assets

of the Commercial Pool, and R2 Capital would furnish to pool participants

monthly statements with profits or losses and estimated expenses; and

f.      R2 Capital, as the general partner, would not possess Commercial Pool property.

28.     Defendants Tomazin and RAST, on behalf of R2 Capital, also made other oral

misrepresentations to prospective pool participants to fraudulently induce them to invest.  For

example, Tomazin, on behalf of R2 Capital, falsely represented to a pool participant that he could

expect "double-digit returns" from the Pool.

29.     Contrary to these representations, as established below, Defendants Tomazin and

RAST, on behalf of R2 Capital, misappropriated participant funds while the Commercial Pool

was losing money; commingled participant funds with their own funds and the funds of the other

Defendants; loaned or transferred funds from the Commercial Pool to themselves and the other

Defendants; and failed to conduct an annual third-party audit.

**5)      Trading and False Representations**

30.     Between January 2010 and May 2010, more than $2.2 million was transferred from R2

Commercial Pool's US Bank account to Commercial Pool trading account at now-defunct futures

commission merchant ("FCM") Peregrine Financial Group (the "PFG forex account"), using pool

participant funds to trade forex.  Defendants Tomazin and RAST deposited or caused to be deposited

$2.2 million into the PFG forex account,  sustaining losses of $1.4 million.  In August 2010,

Defendants Tomazin and RAST opened or caused to be opened another trading account at

FCM Interactive Brokers (the "IB trading account"), and R2 Capital traded E-mini S&P 500 futures and other security products, realizing gains of approximately $237,000. After netting the Commercial Pool's $1.4 million losses in the PFG forex account and the approximately $200,000 trading gains in the IB trading account, approximately $1.2 million in assets should have remained in the Commercial Pool.

31.     In July 2011, the Commercial Pool ceased all trading. However, beginning in August 2011, Defendants Tomazin and RAST, on behalf of R2 Capital, falsely represented, in writing, to at least one pool participant that the Commercial Pool was increasing in value due to successful trading, when in fact no trading was taking place. For example, for approximately 19 months, from August 2011 through March 2013, Defendants Tomazin and RAST, on behalf of R2 Capital, generated and issued to one pool participant false monthly account statements. All of these monthly account statements misrepresented that the fund returned profits from trading, increased in value, and incurred trading expenses.

32.     In 2012 and 2013, Defendants Tomazin and RAST, on behalf of R2 Capital, also periodically issued to at least one pool participant narrative written reports, which misrepresented that the Commercial Pool had earned substantial profits from trading futures contracts in late 2011 and all of 2012, when in fact the Pool had ceased trading after July 2011.

33.     Defendants Tomazin and RAST, on behalf of R2 Capital, also routinely, orally, and in writing, misrepresented to existing pool participants that the pool was successfully generating profits from trading, when in fact it was losing money or not trading at all. Defendants Tomazin and RAST, on behalf of R2 Capital, also falsely and fraudulently represented that the pool was continuing to trade forex, when in truth the pool had ceased trading forex and was instead trading in financial futures and other securities products.

34. Defendants Tomazin and RAST, on behalf of R2 Capital, represented that the Pool would be independently audited, but it was not.

35. Pool participants relied on these statements in continuing to maintain their money with the Commercial Pool. Each of these statements was material because they affected actual and prospective pool participants' decision to participate in the Commercial Pool, withdraw funds, or deposit additional funds.

### 6) Misappropriation and Concealment

36. During the relevant period, Defendant Tomazin misappropriated for personal use, and made unauthorized expenditures with, the approximately $1.2 million in assets which remained in the Commercial Pool after trading losses, contrary to the representations to actual and prospective pool participants, and in violation of the terms of the Limited Partnership and Subscription Agreements.

37. Moreover, Defendant Tomazin concealed the misappropriation from pool participants. For example, in response to a pool participant's request for a partial redemption of funds, Defendant Tomazin fraudulently represented that the funds were still held by the Commercial Pool and that technical difficulties at banks or FCMs, the Securities and Exchange Commission, CFTC, and/or NFA, or the government shutdown in October 2013 prevented redemption.

### 7) R2 Commingled Pool Participant Funds

38. As described above, Defendants Tomazin and RAST misappropriated pool participant funds after depositing the funds in the R2 Capital and Commercial Pool bank accounts. Before the misappropriation occurred, however, R2 Capital commingled pool participant funds by, among other things, transferring pool participant funds from R2 Capital's and/or the Commercial Pool's bank accounts into the personal bank accounts of Tomazin, Madigan and Vest and the defendant holding companies.

### 8) Tomazin was a Controlling Person of R2 Capital

39. Tomazin was a controlling person of R2 Capital. During the relevant period, Tomazin and others were primarily responsible for R2 Capital's day-to-day operations, including managing the accounting, reporting, customer solicitations and customer relations responsibilities. Tomazin was a signatory on each of R2 Capital's and the Commercial Pool's bank accounts, including an account used to accept and misappropriate pool participant deposits. He personally solicited customers, made false representations to participants orally and through their emails, limited partnership and subscription agreements, account statements and quarterly reports.

### B. Conclusions of Law

#### 1) Jurisdiction and Venue

40. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

41. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants Tomazin and RAST resided in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**2)** **Defendants Tomazin and RAST Violated Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C): Fraud in Connection With Commodity Futures Contracts**

42.     By the conduct described above, Defendants Tomazin and RAST cheated or defrauded or attempted to cheat or defraud other persons; issued or caused to be issued false statements; and willfully deceived or attempted to deceive other persons in connection with the offering of, or entering into futures contracts and the margined or leveraged forex transactions alleged herein, by, among other things:

a.  Making false and fraudulent statements in the solicitation of prospective and actual pool participants, including the "Confidential Information Memorandum," the "Limited Partnership Agreement," and the "Subscription Agreements" as set forth above;

b.  Misrepresenting that participants' funds were used to effect transactions only in forex;

c.  Misrepresenting the profitability of the pool, and that the Commercial Pool was successfully trading;

d.  Failing to disclose Defendants' lack of trading;

e.  Misappropriating pool participant funds for their personal use and enjoyment;

f.  Distributing false account statements and written and oral reports to pool participants;

g.  Failing to provide the MRA to pool participants, disclose the findings therein to pool participants, or even to divulge the existence of these actions to pool participants; and

h.  Making fraudulent written and oral promises to redeem pool participants' funds, that misrepresented the value of customers' accounts and customers' holdings,

all in violation of Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012).

43.     Defendants Tomazin and RAST, on behalf of R2 Capital, engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth.

44.     Tomazin and RAST  directly or indirectly, controlled R2 Capital and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting R2 Capital's violations.  Tomazin and RAST are therefore liable for R2 Capital's violations of the Act and Regulations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

45.     The foregoing acts of fraudulent solicitation, misappropriation and false statements by Tomazin occurred within the scope of his employment, office or agency with  R2 Capital.

**3)      Defendants Tomazin and RAST Violated Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§  6b(a)(2)(A)-(C):  Fraud in Connection with Forex Contracts**

46.     By the conduct described above, and for conduct before July 16, 2011, Defendants Tomazin and RAST cheated or defrauded or attempted to cheat or defraud other persons; willfully made or caused to be made false reports or statements; or willfully deceived or attempted to deceive other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery other than on or subject to the rules of a designated contract market, in violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (Supp. IV 2010).

47.     By the conduct described above, and for conduct on or after July 16, 2011, Defendants Tomazin and RAST  cheated or defrauded or attempted to cheat or defraud other persons; willfully made or caused to be made false reports or statements; or willfully deceived or attempted to deceive other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, other than on or subject to the rules of a designated contract market, in violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2012).

48.     Sections 4b(a)(2)(A)-(C) of the Act apply to the forex transactions, agreements or contracts offered by Defendants Tomazin and RAST as if they were futures contracts.  Section 2(c)(2)(C)(iv) of the   Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012).

49.     For conduct on or after July 16, 2011, and during the relevant period, Defendants Tomazin and RAST  cheated or defrauded or attempted to cheat or defraud other persons; issued or caused to be issued false statements; and willfully deceived or attempted to deceive other persons in connection with offering of, or entering into futures contracts and the margined or leveraged forex transactions alleged herein, by fraudulently soliciting prospective and existing pool participants by making material misrepresentations and omissions, including but not limited to the fraudulent conduct described herein, in violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2012).

50.     Defendants Tomazin and RAST engaged in the acts and practices described above knowingly, willfully or with reckless disregard for the truth.

51.     Tomazin and RAST, directly or indirectly, controlled R2 Capital and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting R2 Capital's violations.  Tomazin and RAST are therefore liable for R2 Capital's violations of the Act and Regulations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13(b) (2012).

52.     The foregoing acts of fraudulent solicitation, misappropriation and false statements by Tomazin and RAST occurred within the scope of their employment, office or agency with R2 Capital.

**4)     Defendants Tomazin and RAST Violated Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1):  Fraud by a  Commodity Pool Operator**

53.     During the relevant period, Defendant R2 Capital acted as a CPO by soliciting, accepting, or receiving funds from others while engaged in a business that is of the nature of an

investment trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in futures contracts. The fraudulent acts include, inter alia, those described above.

54.    Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), prohibits CPOs from using the mails or any other means or instrumentality of interstate commerce to (A) employ any device, scheme or artifice to defraud any client or participant or prospective client or participant; or (B) engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant.

55.    By the conduct described above, Defendant R2 Capital employed a device, scheme or artifice to defraud actual and prospective pool participants or engaged in transactions, practices or course of business which operates as a fraud or deceit upon participants or prospective participants.

56.    Tomazin directly or indirectly, controlled R2 Capital and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting R2 Capital's violations. Tomazin is therefore liable for R2 Capital's violations of the Act and Regulations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13(b) (2012).

57.    The foregoing acts of fraudulent solicitation, misappropriation and false statements  by Tomazin occurred within the scope of his employment, office or agency with each of their  respective defendant holding companies, and with R2 Capital.

**5)      Defendant R2 Capital Violated Regulation 4.20(c):  Commingling of Pool Participant Funds**

58.    By the conduct described above, Defendant R2 Capital  commingled pool participant funds by, among other things, transferring pool participant funds  from R2 Capital's and/or the Commercial Pool's bank accounts into the personal bank accounts of Tomazin, Madigan and Vest and the defendant holding companies in violation of Regulation  4.20(c), 17 C.F.R. § 4.20(c) (2016).

59.     Tomazin directly or indirectly, controlled R2 Capital and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting R2 Capital's violations. Tomazin is therefore liable for R2 Capital's violations of the Act and Regulations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13(b) (2012).

60.     The foregoing acts of unlawful commingling of funds by Tomazin occurred within the scope of his employment, office or agency with each of their respective defendant holding companies, and with R2 Capital.

61.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendants Tomazin and RAST will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## III.  ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

62.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendants Tomazin and RAST are permanently restrained, enjoined and prohibited from directly or indirectly:

a.      in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the

18

other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person in violation of Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (2012).

b.      in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person in violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2012).

c.      using the mails or any other means or instrumentality of interstate commerce, directly or indirectly to (A) employ any device, scheme or artifice to defraud any client or participant or prospective client or participant; or (B) engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant while acting as a

commodity pool operator, in violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2012);

d.  commingling the property of any pool that it operates or that it intends to operate with the property of any other person in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c).

63.  Defendants Tomazin and RAST are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2012));

b.  Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2016)) for Tomazin or RAST's own personal account or for any account in which they have a direct or indirect interest;

c.  Having any commodity interests traded on their behalf;

d.  Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.  Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.  Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016); and/or

g.  Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016).

## IV.  RESTITUTION AND CIVIL MONETARY PENALTY

### A.    Restitution

64.    Defendants Tomazin and RAST's violations of the Act and Regulations merit the award of restitution.  However, this Court recognizes that the court in a related criminal action, entitled *U.S. v. Tomazin*, No. 1:14-cr-00790 (S.D.N.Y. Judgment Oct. 14, 2015), has ordered that Defendant Tomazin pay restitution in the amount of two-hundred eighty-eight thousand dollars ($288,000) to the defrauded investors of the Defendants in connection with the same conduct at issue in this action.  Accordingly, Defendants Tomazin and RAST shall pay, on a joint and several basis amongst all Defendants, if any, found liable in the above-captioned action, restitution in the amount of one million, two hundred  eighty six thousand, seven hundred eight seven dollars and fifty cents ($1,286,787.50), less  amounts paid in restitution in the criminal action, plus post-judgment interest ("Restitution   Obligation").  Within ten (10) days of disbursement in the criminal action to Defendants Tomazin's and RAST's pool  participants, Defendant Tomazin shall, under a cover letter that identifies the name and docket   number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, and the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, copies of the form of payment to those pool participants.

65.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to the pool participants, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall collect restitution payments from Defendants Tomazin and RAST and make distributions as set forth below.  Because the Monitor is acting as an   officer of this Court in performing these services, the NFA shall not be liable for any action or  inaction arising from NFA's appointment as Monitor, other than actions

involving fraud.

66.     Defendants Tomazin and RAST shall make Restitution Obligation payments under this Consent Order to the Monitor in the name "R2 Capital/Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendants and the name and docket number of this proceeding. Defendants Tomazin and RAST shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

67.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to the pool participants identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
ATTN: Accounts Receivables
DOT/FAA/MMAC/AMZ-341
CFTC/CPSC/SEC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
(405) 954-7262 office
(405) 954-1620 fax
nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants Tomazin and RAST shall contact

Nikki Gibson or her successor at the address above to receive payment instructions and shall

fully comply with those instructions. Defendants Tomazin and RAST shall accompany payment

of the CMP Obligation with a cover letter that identifies Defendants Tomazin and RAST and the

name and docket number of this proceeding. Defendants Tomazin and RAST shall

simultaneously transmit copies of the cover letter and the form of payment to the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st

Street, N.W., Washington, D.C. 20581.

68. Defendants Tomazin and RAST shall cooperate with the Monitor as appropriate to

provide such information as the Monitor deems necessary and appropriate to identify the pool

participants to whom the Monitor, in its sole discretion, may determine to include in any plan for

distribution of any Restitution Obligation payments. Defendants Tomazin and RAST shall

execute any documents necessary to release funds that they have in any repository, bank,

investment or other financial institution, wherever located, in order to make partial or total

payment toward the Restitution Obligation.

69. The Monitor shall provide the Commission at the beginning of each calendar year

with a report detailing the disbursement of funds to the pool participants during the previous

year. The Monitor shall transmit this report under a cover letter that identifies the name

and docket number of this proceeding to the Chief Financial Officer, Commodity Futures

Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

70.     The amounts payable to each pool participant shall not limit the ability of any pool

participant from proving that a greater amount is owed from Defendants Tomazin and RAST or

any other person or  entity, and nothing herein shall be construed in any way to limit or abridge

the rights of any pool  participant that exist under state or common law.

71.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant

who suffered a loss is explicitly made an intended third-party beneficiary of this  Consent Order

and may seek to enforce obedience of this Consent Order to obtain satisfaction of  any portion of

the restitution that has not been paid by Defendants Tomazin and RAST to ensure continued

compliance with any provision of this Consent Order and to hold Defendants Tomazin and RAST

in contempt for any  violations of any provision of this Consent Order.

72.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of

the Restitution Obligation, such funds shall be transferred to the Monitor for

disbursement in accordance with the procedures set forth above.

**B.      Civil Monetary Penalty**

73.     Defendants Tomazin and RAST shall pay, jointly and severally, a civil monetary

penalty.

74.     The Court shall determine the amount of civil monetary penalty and the procedures

for payment by further order upon:  motion of the parties submitting to the Court a proposed

consent order setting out their agreement on the amount of civil monetary penalty to be paid by

Defendants Tomazin and RAST in this matter; subsequent motion by the CFTC; and/or hearing

before this Court.

75.     In connection with any Commission motion for a civil monetary penalty against Defendants Tomazin and RAST, and at any hearing held on such a motion:  (a) Defendants Tomazin and RAST will be precluded from arguing that they did not violate the federal laws as alleged in the Complaint; (b) Defendants Tomazin and RAST may not challenge the validity of their consents and agreements herein or this Consent Order; (c) solely for the purposes of such motion, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, witness testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for civil monetary penalties, the parties may take discovery, including discovery from appropriate non-parties.

76.     Defendants Tomazin and RAST shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action.  As part of such cooperation, Defendants Tomazin and RAST shall comply, to the full extent of their abilities, promptly and truthfully with any inquiries or requests for information including but not limited to, requests for production of documents and authentication of documents, shall provide assistance at any trial, proceeding, or investigation related to the subject matter of this action, including but not limited to, requests for testimony, depositions, and/or interviews.  Should the CFTC file any additional action(s) related to the subject matter of this action, Defendants Tomazin and RAST are directed to appear in the judicial district in which such action(s) is

pending, or in a suitable judicial district agreed to by the parties, to provide deposition testimony and trial testimony should such testimony be necessary.

## V. MISCELLANEOUS PROVISIONS

77.    Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Deputy Director Paul G. Hayeck
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581

Notice to Defendants Ryan Tomazin and RAST Investor Group, LLC:

c/o Richard J. Banta, Esq.
The Law Office of Richard J. Banta
3773 Cherry Creek North Drive
Suite 575
Denver, CO 80209

All such notices to the Commission shall reference the name and docket number of this action.

78.    Change of Address/Phone:  Until such time as Defendants Tomazin and RAST satisfy their Restitution Obligation as set forth in this Consent Order, Defendants Tomazin and RAST shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

79.    Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

80.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the

application of the provision to any other person or circumstance shall not be affected by the holding.

81.     Waiver:  The failure of any party to this Consent Order or of any pool participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or pool participant at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

82.      Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action.

83.     Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants Tomazin and RAST, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants Tomazin and RAST

84.     Authority:  Defendant RAST hereby warrants that Tomazin is owner, manager and principal of RAST, and that this Consent Order has been duly authorized by RAST and he has been duly empowered to sign and submit this Consent Order on behalf of RAST.

85.     Counterparts and Facsimile or Electronic Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

86.     Contempt:  Defendants Tomazin and RAST understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.


There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order Of Permanent Injunction And Other Equitable Relief Against Ryan Tomazin and RAST Investor Group, LLC* forthwith and without further notice.

**IT IS SO ORDERED** on this_____day of_____, **2017**.


_____
**Marcia S. Krieger**
**Chief United States District Judge**

CONSENTED TO AND APPROVED BY:

RYAN TOMAZIN ON BEHALF OF
RAST INVESTOR GROUP, LLC

Date: __1.13.2017__

RYAN TOMAZIN, individually

Date: __1.13.2017__

LUKE B. MARSH
Chief Trial Attorney
DANIELLE KARST
Senior Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21st St., N.W.
Washington, DC 20581
(202) 418-5322 (Marsh)
lmarsh@cftc.gov
(202) 418-6158 (Karst)
dkarst@cftc.gov

Dated __January 19, 2017__

Approved as to form:

RICHARD J. BANTA
Richard J. Banta, P.C.
Attorney at Law
3773 Cherry Creek North Dr., Suite 575
Denver, CO 80209
303-860-8048
rjbanta@comcast.net
Counsel for Defendants Tomazin and RAST

29