**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-02182-MSK-KLM

U.S. COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

R2 CAPITAL GROUP, LLC;
RAST INVESTOR GROUP, LLC;
MADIGAN ENTERPRISES, INC.;
BULLETPROOF VEST, INC.;
RYAN TOMAZIN;
RYAN MADIGAN; and
RANDELL A. VEST,

    Defendants.

## RYAN MADIGAN, MADIGAN ENTERPRISES, INC., AND R2 CAPITAL GROUP, LLC'S RESPONSE IN OPPOSITION TO ENTRY OF CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST RYAN TOMAZIN AND RAST INVESTOR GROUP, LLC

Defendants Ryan Madigan, Madigan Enterprises, and R2 Capital Group, LLC (collectively, "Madigan Defendants"), by and through undersigned counsel, oppose the motion of Plaintiff United States Commodity Futures Trading Commission and Defendants Ryan Tomazin and RAST Investor Group, LLC (together, "Tomazin Defendants") to enter a consent order of permanent injunction and other relief against the Tomazin Defendants ("Proposed Consent Order"), and in support state as follows:

1

## ARGUMENT

### A. Legal Standard

Consent orders enter as judgments of the Court. *Securities & Exchange Comm'n v. Thermodynamics, Inc.*, 319 F.Supp. 1380, 1382 (1970) ("It is a judicial function and an exercise of the judicial power to render judgment on consent. A judgment upon consent is a judicial act. . . . Thus, the decree entered has the same force and effect as any other judgment, and is a final adjudication on the merits.") (internal citations and quotation marks omitted); *Johnson v. Lodge #'93 of Fraternal Order of Police*, 393 F.3d 1096, 1107 (10th Cir. 2004) ("A consent decree is a negotiated agreement that is entered as a judgment of the court.").

Prior to entering a consent order, the Court must determine that it "is fair, reasonable and equitable and does not violate law or public policy." *United States v. Telluride Co.*, 849 F.Supp. 1400, 1402 (D. Colo. 1994). In addition, a consent decree must "(1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case based on the pleadings; and (3) further the objectives of the law on which the claim is based." *State v. United States*, 1:13-cv-02532 (D. Colo. Dec. 30, 2013) (citing *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 525 (1986)).

As relevant here, a consent decree may not impose duties or obligations on a party that does not consent to settlement. *Phelps-Roper v. Heineman*, 710 F.Supp.2d 890, 899 (D.Neb. 2010) (citing *Firefighters*, 478 U.S. at 530); *Lodge #'93*, 393 F.3d at 1107 (reviewing whether a consent decree imposed duties or obligations on an intervenor); s*ee also United States v. City of Hialeah*, 140 F.3d 968, 975 (11th Cir. 1998) ("[T]he objection of a party whose rights or claims would be adversely affected does bar a proposed consent decree."); *United States v. City of Miami*, 664 F.2d

435, 447 (5th Cir. 1981) (*en banc*) ("A party potentially prejudiced by a decree has a right to a judicial determination of the merits of its objections.")

"If deficiencies are found, it is proper for the district court to advise the parties of its concerns and allow them to submit a revised decree." *State v. United States*, *supra* (citing *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991)).

### B. *The Proposed Consent Decree Should Not Enter Because It Creates A Judicial Determination On Issues That Go Directly To The Madigan Defendants' Liability.*

The Proposed Consent Order includes several statements that prejudice Madigan Defendants in the underlying action. These statements serve as a basis to reject the Proposed Consent Order and are not necessary to its entry. Madigan Defendants respectfully urge the Court to reject the Proposed Consent Order and order the parties to resubmit a revised version that does not prejudice the Madigan Defendants.

**1. Statements affecting the Madigan Defendants**

Madigan Defendants object to any language in the Proposed Consent Order that directly or indirectly imposes liability on R2 Capital Group, LLC ("R2 Capital"), Ryan Madigan, or Madigan Enterprises for alleged violations of the Commodity Exchange Act ("Act"), 7 U.S.C. § 1 *et seq.* or implementing regulations. The Proposed Consent Order makes numerous references to R2 Capital. These include but are not limited to reference stating that Defendants Tomazin and RAST Investor Group, LLC ("RAST") took actions on behalf of R2 Capital (Motion Ex. A ¶¶ 21-23, 27-29, 31-34, 43); that Defendants Tomazin and RAST were acting within the scope of their employment, office, and/or agency when they violated the Act and its accompanying regulations (*id.* ¶¶ 45, 52, 57, 60); that Defendants Tomazin, Vest, and Madigan equally owned, and jointly controlled, the operations of R2 Capital through their respective holding companies (*id.* ¶¶ 20, 24);

that Tomazin and Madigan handled R2 Capital's day-to-day operations (*id.* ¶¶ 24, 39); that R2 Capital traded futures and other security products (*id.* ¶ 30); that R2 Capital comingled investor funds by transferring those funds into the personal bank accounts of Tomazin, Madigan, and Vest and their companies (*id.* ¶¶ 38, 58); that R2 Capital acted as a Commercial Pool Operator (*id.* ¶ 53); that R2 Capital "employed a device, scheme or artifice to defraud" investors or potential investors (*id.* ¶ 55); and that R2 Capital violated Commodity Futures Trading Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c) (*id.* at 17 "heading" 5).

### 2. Prejudice to Madigan Defendants

These sections prejudice Madigan Defendants because they impose liability on R2 Capital as well as Ryan Madigan and Madigan Enterprises, Inc. Under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.*, liability flows from agents to principles, and from entities to their owners. 7 U.S.C. §§ 2(a)(1)(B); 13c(b). 7 U.S.C. § 2(a)(1)(B) states that

> The act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person.

7 U.S.C. § 13c(b) states that

> Any person who, directly or indirectly, controls any person who has violated any provision of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.

Therefore, if an agent of R2 Capital acting within the scope of his/her/their employment or office violates the Act, then that violation is attributed to R2 Capital as well. 7 U.S.C. § 2(a)(1)(B). And,

if R2 Capital is deemed to have violated the Act, then any person who directly or indirectly controlled R2 Capital would also be liable for the same violations if the controlling person did not act in good faith or knowingly induced the violations. 7 U.S.C. § 13c(b).

The Proposed Consent Order explicitly imposes liability on R2 Capital by its statements that R2 Capital, as a Commodity Pool Operator, comingled funds in violation of Commodity Futures Trading Commission Regulation 4.20(c) and employed a device, scheme or artifice to defraud" investors. (Motion Ex. A ¶¶ 38, 53, 55, 58.) The Proposed Consent Order also indirectly imposes liability on R2 Capital for the violations of Tomazin and RAST by its statements that Tomazin and RAST acted on behalf of R2 Capital and within the scope of their employment, office, and/or agency for R2 Capital. (*Id.* ¶¶ 21-23, 27-29, 31-34, 43, 45, 52, 57, 60.) Finally, the Proposed Consent Order also indirectly imposes liability on Ryan Madigan and Madigan Enterprises, Inc. by its statements that Tomazin, Vest, and Madigan equally owned, and jointly controlled, the operations of R2 Capital through their respective holding companies and that Tomazin and Madigan handled R2 Capital's day-to-day operations. (*Id*. ¶¶ 20, 24, 39.)

### 3. Additional statements prejudicing Madigan Defendants

The Proposed Consent Order includes additional statements that go to liability of the Madigan Defendants. These include general references to "Defendants" (Motion Ex. A ¶¶ 29, 42(d), 64 (line 5)); numerous references to R2 Commercial Capital Partners I L.P. as the "Commercial Pool" or a "commodity pool" or "pool" (*id.* ¶¶ 21-39, 42, 49, 58, 62(c)-(d), 64-65, 67-71, 81); a statement that Tomazin Defendants admit that certain statements were "material" (*id.* ¶ 35); a statement that Tomazin Defendants admit Plaintiff has jurisdiction over the conduct and transactions at issue (*id.* ¶ 5); a statement that Tomazin Defendants agree not to "take any action

or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order . . . provided, however, that nothing in this provisions shall affect Defendants Tomazin and RAST's: (a) testimonial obligations" (*id.* ¶ 10); and a statement that Tomazin Defendants admit to all of the Findings of Fact in this Consent Order and all of the allegations in the Complaint (*id.* ¶ 11).[1]

These additional statements are prejudicial because they go to specific factual or legal issues in the case that have not been determined, including: whether R2 Commercial Capital Partners I L.P. is a "commodity Pool" as that term is defined in the Act and/or whether R2 Capital was a "Commodity Pool Operator" during the relevant time frame; whether certain allegedly false statements were "material;" whether Plaintiff has jurisdiction over the conduct and transactions at issue; and the contents of Tomazin's deposition and trial testimony.

### 4. Prejudice to third parties is a basis for rejecting a proposed consent decree.

These statements within Proposed Consent Order prejudice Madigan Defendants because they would eliminate the Madigan Defendants' defenses by judicial act. As discussed above, a consent order has the same force and effect as any other judgment of the Court. *Thermodynamics, Inc.*, 319 F.Supp. at 1382; *Lodge #'93*, 393 F.3d at 1107. In *Phelps-Roper v. Heineman*, the District Court for the District of Nebraska declined to adopt a proposed consent decree because the consent decree in question created a party's complete defense in a separate action. 710 F.Supp.2d at 900. The Court stated

> The Proposed Consent Decree also affects the rights and duties of parties who did not consent to its terms. The Proposed Consent Decree states that the criminal

---

[1] During conferral, counsel for Madigan Defendants objected to references to "Defendants" (plural), which counsel for the CFTC declined to remove. Upon further investigation regarding implications of the Proposed Consent Order, Madigan Defendants object to a number of additional statements as discussed elsewhere in this Response.

>citations and preconditions placed on Phelps-Roper were unconstitutional. At this early stage of the litigation, it is not apparent that a court order is necessary to rectify a violation of the federal constitution. *See Perkins*, 47 F.3d at 216. A decree that the underlying arrest was unconstitutional would be a complete defense, backed by judicial force, to Phelps-Roper's criminal action pending in the county court. Thus, the terms would affect the rights and duties of the county attorney who prosecutes the crime, and the State of Nebraska which delegates enforcement of its laws to county and municipal authorities. Absent the affected parties' consent or a supported finding that the statutes and enforcement methods used by the Bellevue Defendants were unconstitutional, court approval is improper.

*Id. Phelps-Roper* stands for the proposition that a statement contained in a consent decree would have conclusive effect on the same issue in a separate action. (That would appear equally if not more true in the same action.) Like in *Phelps-Roper*, judicial approval of the Proposed Consent Decree in this case would affect the rights and duties of the Madigan Defendants by restricting their available defenses in the underlying action and would impose duties or obligations on a party that does not consent to settlement—a basis for denying its entry. *See id.* at 899; *City of Hialeah*, 140 F.3d at 975; *City of Miami*, 664 F.2d at 447.

Plaintiff and the Tomazin Defendants argue that the statements would not prejudice or affect the liability of the Madigan Defendants because the Proposed Consent Order contains the following language:

>The Findings and Conclusions in this Consent Order are not binding on any other party to this action. Nothing in the Findings and Conclusions in this Consent Order may be used to establish, reduce, increase, eliminate or in any way affect the liability of any of the remaining Defendants in this action who are not parties to this Consent Order.

(Motion at 3 (citing Motion Ex. A. ¶ 17).) However, as indicated above, many of the offending statements fall outside the Findings and Conclusions sections of the Proposed Consent Order. More importantly, this does not address the fact that the entry of a Proposed Consent Order would

sanction statements regarding Madigan Defendants' liability in a published order that acts as a final adjudication on the merits. *Thermodynamics*, 319 F.Supp. at 1382.[2]

### 5. The statements of liability are not necessary.

Moreover, the statements in question are not necessary to the entry of a consent order affecting only Tomazin and RAST. A party's admission of liability—much less the admission of liability of a non-party to the order—is not one of the prerequisites to the entry of a consent order. *Cf. Telluride Co.*, 849 F.Supp. at 1402 ("Prior to entering a consent order, the Court must determine that it "is fair, reasonable and equitable and does not violate law or public policy."); *State v. United States, supra* ("[A] consent decree must "(1) spring from and serve to resolve a dispute within the court's subject matter jurisdiction; (2) come within the general scope of the case based on the pleadings; and (3) further the objectives of the law on which the claim is based.") In *United States v. Bank of America, N.A.*, the District Court for the Western District of North Carolina noted that a party's denial of the allegations in the Complaint does not bar approval of the consent order. 3:12-cv-605 (W.D. N.C. Oct. 10, 2012) ("The Court notes that Bank of America's denial of the allegations in the Complaint poses no barrier to approving the consent order."); *see also SEC v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 165 (2d Cir. 2012) (*per curiam*) ("Finally, we question the district court's apparent view that the public interest is disserved by an agency settlement that does not require the defendant's admission of liability. Requiring such an admission would in most cases undermine any chance for compromise."). These statements implicating the Madigan Defendants—even to the extent they go to the full admission of liability of Tomazin and RAST—

---

[2] Undersigned could find no case law discussing the use of a disclaimer statement in a consent order to avoid the preclusive effect on non-settling parties.

are not necessary to include and should not be preconditions to the entry of the Proposed Consent Order.

### 6. Requested Relief

Madigan Defendants respectfully request that the Court advise Plaintiff and Tomazin Defendants of the offending statements and provide them an opportunity to revise the Proposed Consent Order.  *See State v. United States*, *supra* (citing United States v. State of Colo., 937 F.2d 505, 509 (10th Cir. 1991)) ("If deficiencies are found, it is proper for the district court to advise the parties of its concerns and allow them to submit a revised decree.")

## CONCLUSION

Based on the foregoing, Madigan Defendants respectfully urge the Court to deny the motion to enter the Proposed Consent Order and order what further relief it deems proper.

Dated: February 6, 2017.        Respectfully submitted:
                                *s/Michael J. Davis*
                                By: _____
                                Michael J. Davis
                                BKN Murray, LLP
                                6795 E. Tennessee Ave., Ste. 330
                                Denver, CO 80224
                                P: (720) 361-6036
                                F: (303) 758-5055
                                E: mdavis@bknmurray.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2017, a copy of the foregoing Response In Opposition To Entry Of Consent Order Of Permanent Injunction And Other Relief Against Ryan Tomazin And Rast Investor Group, LLC was filed and served electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

Additionally, I hereby certify that on this February 6, 2017, service of the foregoing was made on the following Defendants via First-Class United States Postal Service Mail:

Pro Se Defendant Randell A. Vest
9613 Halyards Ct.
Fort Myers, FL 33919

Pro Se Defendant Bulletproof Vest, Inc.
9613 Halyards Ct.
Fort Myers, FL 33919

Dated: February 3, 2017.    Respectfully submitted:
*s/Michael J. Davis*
By: _____
Michael J. Davis
BKN Murray, LLP
6795 E. Tennessee Ave., Ste. 330
Denver, CO 80224
P: (720) 361-6036
F: (303) 758-5055
E: mdavis@bknmurray.com