**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Honorable Marcia S. Krieger

Civil Action No. 14-CV-02182-MSK-KLM

UNITED STATES COMMODITY FUTURES
TRADING COMMISSION,

        Plaintiff,

v.

R2 CAPITAL GROUP, LLC,
RAST INVESTOR GROUP,
LLC, MADIGAN
ENTERPRISES, INC.,
BULLETPROOF VEST, INC.,
RYAN TOMAZIN,
RYAN MADIGAN, and
RANDELL A. VEST,

        Defendants.

---

**PLAINTIFF'S REPLY
TO OPPOSITION TO JOINT MOTION FOR ENTRY OF CONSENT ORDER
OF PERMANENT INJUNCTION AND OTHER RELIEF**

---

Plaintiff United States Commodity Futures Trading Commission ("CFTC") respectfully submits this Reply to the Opposition (the "Opposition," #136) to the Joint Motion (#134) for Consent Order of Permanent Injunction and Other Relief Against Ryan Tomazin and RAST Investor Group, LLC (the "Consent Order," #134-1), filed by Ryan Madigan, Madigan Enterprises, Inc., and R2 Capital Group, LLC, (collectively, the "Non-Settling Defendants"). For the reasons that follow, the Court should enter the proposed Consent Order as written.

## I.     INTRODUCTION

The Non-Settling Defendants oppose the Joint Motion for Consent Order of Permanent Injunction and Other Relief Against Ryan Tomazin ("Tomazin") and RAST Investor Group, LLC ("RAST"), (#134 and #134-1), and seek an order directing Plaintiff and the settling Defendants to submit a revised consent order that does not "prejudice" Ryan Madigan ("Madigan") or Madigan Enterprises, Inc. (together, the "Madigan Defendants"), by "directly or indirectly" imposing liability upon them. (#136 (Opp.) at 3.)

The Opposition is based upon a flawed understanding of how courts interpret consent orders. Contrary to well-settled principles of contract law, the Non-Settling Defendants attempt to manufacture prejudice by supplying their own interpretations in place of the plain language of the Consent Order—Paragraph 17 of which expressly precludes the Consent Order from affecting their liability "in any way." (#134-1, ¶ 17.) The express terms of the Consent Order, and basic contract law, fully protect the Non-Settling Defendants from incurring any liability as a result of the Court entering the Consent Order and settling this case between Plaintiff and Defendants Tomazin and RAST.

Even if the Non-Settling Defendants' approach were proper, nearly all of the so-called "offending statements" in the Consent Order *were already admitted* by Defendant R2 Capital Group, LLC ("R2 Capital") and the Madigan Defendants in their answers (#74, #76) to the First Amended Complaint ("Complaint," #38) and in the Scheduling Order (#87, at 6). The Non-Settling Defendants have therefore waived any defenses to the so-called "offending statements."

The Non-Settling Defendants also mischaracterize the standards courts apply to consent orders to which federal agencies like the CFTC are parties. The Non-Settling Defendants ignore the strong public interest that would be served by entering the Consent Order as written, as well

as the deference courts extend to the CFTC in resolving enforcement actions involving the markets it regulates. As the Opposition is without merit, the Court should reject it.

## II. ARGUMENT

**A. The Consent Order Does Not Prejudice the Non-Settling Defendants.**

### 1. The Plain Language of the Consent Order is Controlling and Prevents Any Risk of Prejudice to the Non-Settling Defendants.

Consent orders operate as contracts and are subject to the principles of contract interpretation. *U.S. v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975) (determining that because "consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts.") "Where a contract is unambiguous, its terms are given plain meaning, and the intent of the parties is determined from the document alone." *Anthony v. U.S.*, 987 F.2d 670, 673 (10th Cir. 1993).

Here, there is nothing ambiguous about the Consent Order. Paragraph 17 provides:

> The Findings and Conclusions in the Consent Order are not binding on any other party to this action. Nothing in the Findings and Conclusions in this Consent Order may be used to establish, reduce, increase, eliminate or in any way affect the liability of any of the remaining Defendants in this action who are not parties to this Consent Order.

(#134-1, ¶ 17.)

Therefore the Consent Order cannot reasonably be read to impose liability upon the Non-Settling Defendants because, as Paragraph 17 plainly states, the relevant portions of the Consent Order are "not binding" on the Non-Settling Defendants and may not "in any way affect [their] liability." *See U.S. v. Armour & Co.*, 402 U.S. 673, 682 (1971) (as a creature of contract, "[t]he scope of a consent decree must be discerned within its four corners.")

Despite this plain language of the Consent Order, and disregarding the well-established law that the "the intent of the parties [is to be determined] from the document alone," *Anthony*, 987 F.2d at 673, the Non-Settling Defendants simply ignore the four corners of the Consent Order and make the unsupported claim that they will be prejudiced by the Court allowing this settlement to go forward.[1] Such attempts to interpret the Consent Order contrary to its plain language fail as a matter of contract law and should be rejected.[2] *See ITT*, 420 U.S. at 223.

### 2. The Non-Settling Defendants Waived Any Defenses to the So-Called "Offending Statements" in Their Answers to the Complaint and in the Scheduling Order.

The Non-Settling Defendants broadly object to dozens of paragraphs in the Consent Order on grounds they "directly or indirectly" impose liability upon the Non-Settling Defendants. (#136 (Opp.) at 4-6.) Ignoring the plain meaning of the Consent Order, the Non-Settling Defendants contend that because of vicarious liability provisions within the Act, the Consent Order imposes liability upon the Non-Settling Defendants for each other's conduct, as well as the conduct of Tomazin and RAST, rendering nearly every statement in the Consent Order "prejudicial" to the Madigan Defendants. (#136 (Opp.) at 4-5.)

Even assuming that the basic principles of contract law were ignored, nearly every so-called "offending statement" (#136 (Opp.) at 7, 9) was previously admitted by the Non-Settling Defendants in their answers to the Complaint and in the Scheduling Order. (#74, #76, #87.)

---

[1] *See*, *e.g*., #136 (Opp.) at 4 ("These sections prejudice the Madigan Defendants because they impose liability on R2 Capital as well as Ryan Madigan and Madigan Enterprises, Inc. Under the Commodity Exchange Act . . . liability flows from agents to principles [sic], and from entities to their owners.").

[2] The Non-Settling Defendants' cited authority actually undercuts their attempt to ignore the plain language of the Consent Order. *See Johnson v. Lodge #93 of Fraternal Order of Police*, 393 F.3d 1096, 1105 (10th Cir. 2004) (upholding consent agreement and finding that it had no adverse effect on others because "[t]he consent decree itself acknowledges the continuing validity of the [collective bargaining agreement]" from which appellants' rights arose) (*cited* #136 (Opp.) at 2.)

Accordingly, the Non-Settling Defendants have waived any challenge to those provisions of the Consent Order. *See Heavy Petroleum Partners*, *LLC v. Atkins*, 457 F. App'x 735, 741 (10th Cir. 2012) (defendants "waived any challenge" to joint operating agreement in part by "admit[ing] in their answer the truth of Plaintiff's allegation.")

Each set of statements below compares the so-called "offending statements" in the Consent Order to statements the Non-Settling Defendants previously admitted. In each instance, the Non-Settling Defendants' prior admissions waived any defenses to the so-called "offending statements."

**(i)      Non-Settling Defendants object to**:

"[R]eferences stating that Defendants Tomazin and [RAST] took actions on behalf of R2 Capital." (#136 (Opp.) at 3, *citing* #134-1 (Consent Order) ¶¶ 21-23, 27-29, 31-34, 43.)

**Non-Settling Defendants previously admitted**:

Tomazin, Madigan, and Vest "were the only signatories on trading account opening documents for R2 Capital and/or the Commercial Pool, and as principals of R2 Capital, all had trading authority" (#74 (R2 Ans.) ¶ 31; #76 (Madigan Ans.) ¶ 31); R2 Capital was "created by Tomazin in November 2008" (#74 (R2 Ans.) ¶ 20; #76 (Madigan Ans.) ¶ 20); Tomazin "formed R2 Capital as a limited liability company" (#87 (Sched. Order) ¶ 4); Tomazin "controlled R2 Capital, directly or indirectly" (#76 (Madigan Ans.) ¶ 7; #87 (Scheduling Order) at 4); R2 Capital was "controlled by Tomazin" (#76 (Madigan Ans.) ¶ 20); "Tomazin, controlled, the operations of R2 Capital including managing the accounting, reporting and investor relations responsibilities" (#87 (Scheduling Order) at 4-5); and R2 Capital was "located at Tomazin's home address."

(#74 (R2 Ans.) ¶ 20; #76 (Madigan Ans.) ¶ 20; #87 (Scheduling Order) at 4.)

**(ii)** **Non-Settling Defendants object to**:

"Defendants Tomazin, Vest, and Madigan equally owned, and jointly controlled, the operations of R2 Capital through their respective holding companies." (#136 (Opp.) at 3, *citing* #134-1 (Consent Order) ¶¶ 20, 24.)

**Non-Settling Defendants previously admitted**:

R2 Capital "was initially jointly and equally owned by Tomazin and Madigan"; Tomazin, Madigan, and Vest "assumed equal ownership of R2 Capital" through their "'holding companies'" (#74 (R2 Ans.) ¶ 20; #76 (Madigan Ans.) ¶ 20; #87 (Scheduling Order) at 4, 7 ¶ 9).

**(iii)** **Non-Settling Defendants object to**:

"R2 Capital traded futures and other security products."  (#136 (Opp.) at 4, *citing* #134-1 (Consent Order) ¶ 30.)

**R2 Capital previously admitted**:

R2 Capital "used pool participant funds to trade forex"; "R2 Capital traded E-mini S&P 500 futures and securities products" (#74 (R2 Ans.)  ¶¶ 31, 33); "the Commercial Pool was no longer trading forex, and . . . the Commercial Pool was now trading E-mini S&P 500 futures and securities products."  (#87 (Scheduling Order) at 5.)

**(iv)** **Non-Settling Defendants object to**:

"R2 Capital acted as a Commercial Pool Operator."  (#136 (Opp.) at 4, *citing* #134-1 (Consent Order) ¶ 53.)

**R2 Capital previously admitted***:*

"R2 Capital opened a Commercial Pool trading account at Interactive Brokers,

6

LLC" (#74 (R2 Ans.) ¶ 33); Tomazin "filed a Certificate of Limited Partnership for the Commercial Pool, identifying . . . R2 Capital as the Commercial Pool's General Partner." (#87 (Scheduling Order) at 8, ¶ 11.)

**(v)     Non-Settling Defendants object to**:

"[N]umerous references to R2 Commercial Pool Capital Partners I L.P. as the 'Commercial Pool' or a 'commodity pool' or 'pool.'"  (#136 (Opp.) at 5, *citing* #134-1 (Consent Order) ¶¶ 21-39, 42, 49, 58, 62(c)-(d), 64-65, 67-71, 81.)

**Non-Settling Defendants previously admitted**:

"R2 Capital was never registered with the Commission in any capacity until September 27, 2013, when it registered as a Commodity Pool Operator ("CPO")."  (#74 (R2 Ans.) ¶ 20; #76 (Madigan Ans.) ¶ 20; #87 (Scheduling Order) at 7, ¶ 9.)

**(vi)    Non-Settling Defendants object to**:

"[A] statement that Tomazin Defendants admit Plaintiff has jurisdiction over the conduct and transactions at issue."  (#136 (Opp.) at 5, *citing* #134-1 (Consent Order) ¶ 5.)

**Non-Settling Defendants previously admitted**:

The allegation in paragraph 11 of the Complaint (#38) that "Section 6c(a) of the Act, as amended, 7 U.S.C. § 13a-1(a)(2012) . . .authorizes the Commission to seek injunctive and other relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder."  (#74 (R2 Ans.) ¶ 11; #76 (Madigan Ans.) ¶ 11; #87 (Scheduling Order) at 6, ¶ 2.)

Therefore the Consent Order as written cannot prejudice the Madigan Defendants because the Non-Settling Defendants have previously waived their ability to defend the majority[3] of the Consent Order's so-called "offending statements" (#136 (Opp.) at 7, 9).

### 3. The Non-Settling Defendants Provide No Authority to Support Modifying the Consent Order.

None of the cases cited by the Opposition support the Non-Settling Defendants' claims that they will somehow be prejudiced by the Consent Order. (*See* #136 (Opp.) at 3.) Rather, the Opposition primarily relies upon highly-specialized Title VII cases that examine prejudice from violations of specific rights protected by collective bargaining agreements or the U.S. Constitution. (*See* #136 (Opp.) at 2-3.) These cases are irrelevant.[4]

The Non-Settling Defendants rely heavily upon *Phelps-Roper v. Heineman*, 710 F. Supp. 2d 890 (D. Neb. 2010), for the notion that the Consent Order will prejudice them by limiting their defenses in this action. (#136 (Opp.) at 7.) In *Phelps-Roper*, the court rejected a consent

---

[3] The Non-Settling Defendants' remaining objections to the Consent Order are also unavailing. First, the Non-Settling Defendants take issue with "general references to 'Defendants,'" (#136 (Opp.) at 5, *citing* #134-1 (Consent Order) ¶¶ 29, 42(d), 64 (line 5)). However, as established above, these references cannot create liability because they are addressed by the more specific non-liability language of Paragraph 17 of the Consent Order (#134-1 ¶ 17). *See Sinclair Oil Co. v. Scherer*, 7 F.3d 191, 195 (10th Cir. 1993) (reversing lower court's determination that general "Statement of Purpose" resolved claims specifically carved out of consent order by more specific "Reservation of Rights" provision). Second, their remaining challenges seemingly attempt to restrain Tomazin and RAST from agreeing to admit and not publicly dispute allegations in the Complaint and the Consent Order. (#136 (Opp.) at 7, *citing* #134-1 (Consent Order) ¶¶ 10-11.) The Non-Settling Defendants have no basis for challenging these provisions, and cite no authority permitting them to do so.

[4] *See Johnson*, 393 F.3d at 1107 (upholding Title VII consent decree because it "does not bind [appellant] to do or not to do anything, nor does it impose any legal obligations on [appellant].") (*Cited* #136 (Opp.) at 2, 6); *U.S. v. City of Hialeah*, 140 F.3d 968, 984 (11th Cir. 1998) (affirming refusal to enter Title VII consent decree that "would impair important rights guaranteed to police officers and firefighters in their collective bargaining agreements.") (*Cited* #136 at 2, 7); *U.S. v. City of Miami*, 664 F.2d 435, 447 (5th Cir. 1981) (a "party is prejudiced if the decree would alter its contractual rights" or violate the 14th Amendment) (*cited* #136 at 2, 7.)

decree that illegally restrained police officers from exercising their statutory duty to make arrests and issue citations. 710 F. Supp. 2d at 898, 899 (given their legal duties, the police "lack the power to consent to the terms of the decree.") The court also declined to enter the consent decree because doing so would force the court, "[a]t this early stage of the litigation . . . to rectify a violation of the federal constitution." *Id*. at 900.

The Consent Order here poses no such statutory or constitutional problems, and the Non-Settling Defendants have already "restrict[ed] their available defenses in the underlying action" by admitting nearly all so-called "offending statements" when they answered the Complaint and entered into the Scheduling Order. (#136 (Opp.) at 7, 9; *see supra* Sec. A.2.)

**B.     The Consent Order is Fair, Reasonable, and Equitable.**

The Non-Settling Defendants assert that the Consent Order may only be entered as written if the Court determines that it is "'fair, reasonable and equitable and does not violate law or public policy,'" but they make no argument disputing that the Consent Order satisfies these factors. (#136 (Opp.) at 2, *citing U.S. v. Telluride Co*., 849 F. Supp. 1400 (D. Colo. 1994).) It is true that "[p]rotection of the public interest is the key consideration in assessing whether a [consent] decree is fair, reasonable and adequate." *U.S. v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991). *See also Telluride*, 849 F. Supp. at 1402 ("the most important factor" in evaluating a consent order's reasonableness is "whether the consent decree is in the public interest and upholds the objectives" of the underlying statute).

Here, the Consent Order satisfies these important objectives, as established by the following:

### 1. The Consent Order Protects the Public Interest in the Markets Regulated by the CFTC.

There is a strong public interest in entering the Consent Order as written. The CFTC "'is the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in the commodity futures markets.'" *Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004), *citing Lawrence v. CFTC*, 759 F.2d 767, 776 (9th Cir. 1985). The Consent Order as written advances the purposes of the Commodity Exchange Act by seeking restitution for defrauded commodity pool participants and imposing penalties to deter future violations of the Act and its implementing regulations. (*See* #134-1 (Consent Order) ¶¶ 64-76.)

The cases cited in the Opposition lead to the same conclusion. The Non-Settling Defendants rely upon *SEC v. Citigroup Global Markets, Inc.*, 673 F.3d 158, 165 (2d Cir. 2012), for the contention that admissions of liability by Tomazin and RAST "are not necessary" for entry of the Consent Order. (*Cited* #136 (Opp.) at 8-9.) But *Citigroup* stands for a different proposition: that "[i]n the case of a public executive agency such as the S.E.C.," settlement considerations involve "an assessment of how the public interest is best served. These are precisely the factors that the Supreme Court has recognized as making a discretionary agency decision unsuitable for judicial review." *Citigroup*, 673 F.3d at 164, c*iting Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985). *See also U.S. v. Weiss*, No. 11-cv-02244-RM-MJW, 2013 WL 5937912, at *3 (D. Colo. Nov. 6, 2013) (there is a "strong policy favoring the voluntary settlement of disputes," and "[j]udicial deference to settlements is particularly strong where the consent decree has been negotiated by [a government agency]."); *U.S. v. Bank of Am., N.A.*, No. 3:12-cv-605-RJC-DCK, 2012 WL 4808737, at *4-5 (W.D.N.C. Oct. 10, 2012) (upholding consent order as "fair, reasonable, and consistent with the public interest" and acknowledging

that the government has broad discretion to enter into settlements) (*cited* #136 (Opp.) at 8). Accordingly, the Consent Order as written is fair, reasonable, and equitable, and should not be disturbed.

### III.   CONCLUSION

Based on the foregoing, the Court should enter the Consent Order as written.

Dated: February 17, 2017            Respectfully submitted,

PLAINTIFF U.S. COMMODITY FUTURES
TRADING COMMISSION

s/ Daniel J. Grimm
DANIEL J. GRIMM
Trial Attorney
LUKE B. MARSH
Chief Trial Attorney
DANIELLE KARST
Senior Trial Attorney
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington D.C. 20581
p: (202) 418-5000
f: (202)418-5523
dgrimm@cftc.gov
lmarsh@cftc.gov
dkarst@cftc.gov

## **CERTIFICATE OF SERVICE**

I certify that on February 17, 2017, I filed the foregoing Reply via the CM/ECF system, which will send notification of the filing to the following:

**Counsel for Defendants Ryan Tomazin and RAST Investor Group, LLC**:

Richard J. Banta, Esq.
Law Office of Richard J. Banta, P.C.
3773 Cherry Creek North Drive
Denver, CO 80209
Ph:  (303) 331-3415
Fax:  (303) 331-1195
info@richardbantalaw.com

**Counsel for Defendants Madigan Enterprises, Inc., and Ryan Madigan**:

Michael J. Davis, Esq.
BKN Murray, LLP
6795 E. Tennessee Ave., Suite 330
Denver, CO  80224
Ph:  (303) 758-5100
Fax:  (303) 758-5055
mdavis@bknmurray.com

Additionally, I certify that on February 17, 2017, service of the foregoing Reply was made on the following Defendants via First-Class United States Postal Service Mail:

*Pro Se* **Defendant Randell A. Vest**
9613 Halyards Ct.
Fort Myers, FL 33919

*Pro Se* **Defendant Bulletproof Vest, Inc.**
9613 Halyards Ct.
Fort Myers, FL 33919

                                              s/ Daniel J. Grimm
                                              Daniel J. Grimm