IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 14-CV-02182-MSK-KLM

UNITED STATES COMMODITY FUTURES TRADING COMMISSION,

        Plaintiff,

v.

R2 CAPITAL GROUP, LLC,
RAST INVESTOR GROUP,
LLC, MADIGAN
ENTERPRISES, INC.,
BULLETPROOF VEST, INC.,
RYAN TOMAZIN,
RYAN MADIGAN, and
RANDELL A. VEST,

        Defendants.

---

### _UNOPPOSED_ MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS BULLETPROOF VEST, INC. AND RANDELL A. VEST AND MEMORANDUM IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiff United States Commodity Futures Trading Commission ("Plaintiff" or "CFTC") respectfully moves the Court for final judgment by default against Defendants Bulletproof Vest, Inc. ("Bulletproof Vest") and Randell A. Vest ("Vest"), (together, the "Vest Defendants") and to issue a final order, in the form of the proposed order submitted herewith, that grants permanent injunctive relief and orders the Vest Defendants to pay restitution and a civil monetary penalty.

## STATEMENT PURSUANT TO D.C.COLO.LCivR 7.1(a)

Pursuant to D.C.COLO.LCivR 7.1(a), on February 9, 2018, counsel for Plaintiff conferred by email with counsel for the Madigan and Tomazin Defendants and notified them of Plaintiff's intent to file this Motion[1].  Counsel for both the Tomazin Defendants and Madigan Defendants have represented that they do not oppose the Motion.

## I.    PROCEDURAL HISTORY

On November 4, 2014, Plaintiff filed its First Amended Complaint ("Complaint" or "Compl.," #38) in this action, seeking injunctive and monetary relief against all Defendants for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-26 (2012), and its implementing regulations ("Regulations"), 17 C.F.R. pt. 1.1-190 (2017).  On December 15, 2015, the Vest Defendants filed their Answer to the Complaint (#77).

Except for filing their Answer, the Vest Defendants ceased participating in—and completely abandoned—their defense of this action.  Throughout this litigation, the Vest Defendants refused to respond to Plaintiff's discovery requests or meet and confer regarding discovery.  (#133 at 2).  In fact, on July 11, 2016, then-counsel for the Vest Defendants moved to withdraw from representing them on grounds that the Vest Defendants "refused to communicate with him regarding Plaintiff's discovery requests, or, indeed, regarding any other aspect of their defense." (#133 at 2-3).  The Court granted the motion to withdraw, and ordered new counsel to appear on behalf of the Vest Defendants by August 15, 2016.  (#102).  Substitute counsel never appeared.

---

[1] The Madigan Defendants consist of R2 Capital Group, LLC ("R2 Capital"), Madigan Enterprises, Inc. ("Madigan Enterprises"), and Ryan Madigan ("Madigan").  The Tomazin Defendants consist of RAST Investor Group, LLC ("RAST") and Ryan Tomazin ("Tomazin").

On July 15, 2016, Plaintiff provided a discovery dispute chart to the Magistrate Judge detailing the Vest Defendants' failure to comply with their discovery obligations.  On July 21, 2016, the Magistrate Judge ordered Vest Defendants to file a response to Plaintiff's submission, and that failure to do so "**will result in a recommendation that entry of default and default judgment be entered against these two Defendants.**"  (#103, emphasis in original).  The Vest Defendants never responded.  (*See* #133 at 3-4).

On January 11, 2017, the Court granted Plaintiff's motion for discovery sanctions[2] against the Vest Defendants pursuant to Fed. R. Civ. P. 37.  (#133).  In granting the motion, the Court determined that the Vest Defendants "willfully failed to comply with Court orders" and had shown a "repeated unwillingness to comply with their obligations and participate in this lawsuit."  (#133 at 6).  As a result, the Court struck the Vest Defendants' Answer and affirmative defenses, prohibited them from introducing any evidence at trial, and deemed all facts and allegations in the Complaint admitted as to them.  (#133 at 6-7).

This litigation has proceeded to conclusion against the Madigan and Tomazin Defendants without the Vest Defendants' participation.  On December 1, 2017, the Court granted in part a joint motion by Plaintiff and the Tomazin Defendants for entry of a consent order, resulting in the imposition of trading and registration bans on the Tomazin Defendants.  (#175).  Following two pretrial conferences,[3] on February 12, 2018, Plaintiff filed its Acceptance of the Madigan

---

[2] Plaintiff declined at that time to seek default judgment against the Vest Defendants because partial default judgment is premature where joint and several liability is alleged.  (*See* #121 at 4 n.1); *see also Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) ("[W]hen one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants. . . .").

[3] The pretrial conferences occurred on December 21, 2017, and February 1, 2018.  The Vest Defendants did not appear at either conference, and have never appeared at any hearing or conference in this case.

Defendants' Offer of Judgment pursuant to Fed. R. Civ. P. 68.  (#193).  Plaintiff's claims against the Madigan Defendants were resolved by Judgment entered by the Court on March 2, 2018 (#194).  Thereafter, on March 6, 2018, Plaintiff moved to voluntarily dismiss the Tomazin Defendants from this action.  (#195).  On March 8, 2018, the Court denied the dismissal motion as moot, while determining that the prior permanent injunction entered against the Tomazin Defendants (#175) constitutes final entry of judgment as to them.  (#196).

On March 14, 2018, Plaintiff, having resolved its claims against the Madigan and Tomazin Defendants, submitted an Amended Application to place the Vest Defendants in default under Fed. R. Civ. P. 55(a) for failing to defend the action (#199).  On March 20, 2018, the Clerk placed the Vest Defendants in default.  (#201).

Plaintiff now seeks default judgment against the Vest Defendants pursuant to Fed. R. Civ. P. 55(b).[4]  Although the Vest Defendants have abandoned their defense of all claims alleged against them in the Complaint, Plaintiff seeks default judgment against the Vest Defendants only on the basis of its misappropriation claims (Counts I and II of the Complaint) under Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C).  (*See* Proposed Pretrial Order (#191) at 2-12).

---

[4] The attached Declaration of Daniel J. Grimm addresses the D.C.COLO.LCivR 55.1 requirements for entry of default judgment, including that the Vest Defendants are neither infants nor incompetent persons and are not protected from default judgment by Section 521 of the SCRA, as amended, 50 U.S.C. §§ 3901-4043 (2012).

## II.   STATEMENT OF FACTS

As established above, the Court has deemed all facts and allegations in the Complaint admitted as to the Vest Defendants (#133 at 7).  Those deemed-admitted facts, and the attached Declaration of CFTC Investigator Ken Koh[5], establish the following:

From at least December 2009 through November 4, 2014 (the "Relevant Period"), the Vest Defendants engaged in a scheme to fraudulently solicit and misappropriate more than $2.4 million from commodity pool participants.  (#38, Compl. ¶ 1).

The Vest Defendants convinced at least four pool participants to invest $2,471,181.64 in Defendants' investment pool, known as the R2 Commercial Capital Partners I L.P. commodity pool (the "Commercial Pool").  (#38, Compl. ¶ 1; Koh Decl. (#149-10) ¶ 6).  Of that $2,471,181.64, Defendants lost $1,122,932.12 through foreign currency ("forex") and futures trades, and misappropriated the remaining $1,348,249.52 for their own personal use.  (#38, Compl. ¶ 2; #149-10 ¶ 4.c., 4.d.).  Defendant Vest acted knowingly and willfully through Defendant Bulletproof Vest, his alter ego holding company, to control the Commercial Pool through an equal ownership interest in its General Manager, Defendant R2 Capital.  (#38, Compl. ¶¶ 6, 18, 20, 22-23).

It is further deemed admitted that all the Defendants, through written documents,[6] sham account statements, and verbal representations, knowingly made numerous material false

---

[5] *See* Declaration of Kyong J. Koh pursuant to 17 U.S.C. § 1746 (the "Koh Declaration," #149-10), submitted in support of Plaintiff's Motion for Summary Judgment (#149).  For the Court's convenience, the Koh Declaration is attached hereto as Exhibit A.

[6] The Defendants used a "Confidential Information Memorandum," a "Limited Partnership Agreement," and a "Subscription Agreement" to add pool participants to their fraud.  (#38, Compl. ¶ 27).  Among other false representations, these documents stated that R2 Capital would receive a management fee of 50% of the profits earned by the Commercial Pool, payable only if profits were earned; that all pool participant funds would be deposited directly into the

statements and omissions to pool participants to entice them to contribute funds to the Commercial Pool.  (#38, Compl. ¶¶ 27-30).  Among other misrepresentations and omissions, Defendants knowingly and falsely represented to pool participants that R2 Capital's management fees would be paid only from Commercial Pool trading profits, that the Commercial Pool was consistently profitable, and that the Commercial Pool would generate returns of 8% to 10% per month.  (#38, Compl. ¶¶ 4, 27-28).  Contrary to Defendants' misrepresentations that the Commercial Pool was trading profitably, pool participants' deposits were lost through trading and misappropriation.  (#38, Compl. ¶ 30).

During the Relevant Period, Defendants[7] routinely diverted and misappropriated funds from the R2 Capital and Commercial Pool USBank bank accounts to themselves and their holding companies through checks, direct wire transfers, and purported loans.  (#38, Compl. ¶ 42).  Defendants knowingly committed these acts of misappropriation without pool participants' knowledge and in contravention of the representations Defendants made to pool participants. (#38, Compl. ¶¶ 27, 42).

Between January and May 2010, Defendants transferred $2,205,000 of pool participant funds from the R2 Commercial Pool's USBank account to its trading account at the now-defunct futures commission merchant Peregrine Financial Group ("PFG").  (Koh Decl. ¶ 8).  Between January and August 2010, R2 Capital's PFG trading account suffered net losses of $1,354,737.03 (inclusive of trading losses, commissions, and fees).  (#38, Compl. ¶¶ 31-32; Koh Decl. (#149-10) ¶ 9 & Ex. 2 (PFG Trading Analysis)).

---

Commercial Pool's USBank account; and that no loans would be made between the Commercial Pool and any R2 Capital-affiliated persons or entities.  (#38 ¶ 27).

[7] Although the Complaint's allegations against "Defendants" includes the conduct of all the named Defendants in the case—including the Madigan Defendants and Tomazin Defendants— the phrase is used herein only to apply to the Vest Defendants' participation in this conduct.

In August 2010, Defendant Madigan opened a trading account in the name of R2 Capital at another futures commission merchant, Interactive Brokers, LLC ("IB").  (#38 Compl. ¶ 33; #149-10 ¶ 11 & Ex. 1 at 2).  Between October 2010 and July 2011, R2 Capital traded E-mini S&P 500 futures and securities products in the IB account, realizing gains of $213,804.91.  (#38 Compl. ¶ 33; #149-10 ¶ 12 & Ex. 3 (IB Trading Analysis)).  Netting R2 Capital's $213,804.91 trading gain in the IB account against its $1,354,737.03 loss in the PFG account should have left the Commercial Pool with total net assets of $1,348,249.52 when it ceased trading in July 2011.  (Koh Decl. ¶ 13).  In reality, as a result of Defendants' ongoing misappropriation of Commercial Pool funds, only $194,348.03 remained in the IB account in July 2011.  (Koh Decl. ¶ 26).  These remaining funds were then misappropriated by Defendants between July 2011 and November 2013.

Defendants used a routine process to misappropriate pool participants' funds by moving money from the Commercial Pool's trading accounts, to its USBank account, to R2 Capital's USBank account, and finally to the individual Defendants and their holding companies.  (Koh Decl. ¶ 26).

Of the $2,471,181.64 Defendants solicited, they returned $111,000 to one pool participant as a partial redemption.  (Koh Decl. ¶ 28).  The other three pool participants lost the entirety of their investments, producing total pool participant losses of $2,360,181.64.  (Koh Decl. ¶ 26).  In contrast, the Vest Defendants received total distributions or loans of $308,640 from funds transferred out of the R2 Capital USBank account during the Relevant Period.  (Compl. ¶ 43; Koh Decl. ¶ 15).  These loans and distributions to the Vest Defendants were the misappropriated funds of pool participants and were used to pay the costs of Defendant Vest's personal living expenses.  (Compl. ¶ 42; Koh Decl. ¶ 31; Declaration of Ryan Tomazin pursuant

to 28 U.S.C. § 1746 (the "Tomazin Declaration," #149-13), submitted with Plaintiff's Motion for Summary Judgment (#149), ¶¶ 15, 23).[8]

### III.   ARGUMENT

**A. Default Judgment Against the Vest Defendants is Warranted**

Federal Rule of Civil Procedure 55(b) permits litigants to seek default judgment against a party who has failed to plead or otherwise defend an action. Fed. R. Civ. P. 55(b). Entry of default judgment is subject to the Court's sound discretion. *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). In considering a motion for default judgment, courts first determine whether they possess personal and subject-matter jurisdiction. *Regional Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015).

Where jurisdiction exists, courts consider whether the allegations of the Complaint support a claim for relief. *Reynolds*, 2013 WL 3786645, at *1. In performing this assessment, courts take "as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, No. 02-5026, 64 Fed. App'x 676, 679 (10th Cir. 2003). *See also CFTC v. Flint McClung Capital LLC*, No. 11-cv-01644-CMA-BNB, 2012 WL 639321, at *5 (D. Colo. Feb. 28, 2012) (when ruling on a motion for default judgment, "the well-plead allegations in the complaint are to be taken as true for purposes of establishing liability.")

Default judgment is especially appropriate in this action. The Vest Defendants' refusal to litigate is the only barrier to ending this case. (*See* Sanctions Order (#133) at 6 (referring to the Vest Defendants' "repeated unwillingness to comply with their obligations and participate in this lawsuit")). In these circumstances, default judgment is necessary to protect Plaintiff from "interminable delay and continued uncertainty" resulting from "the adversary process [being]

---

[8] For the Court's convenience, the Tomazin Declaration is attached hereto as Exhibit B.

halted because of an essentially unresponsive party." *Jones v. Marquis Properties, LLC*, 212 F. Supp. 3d 1010, 1015 (D. Colo. 2016) (quoting *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991)).  As the Magistrate Judge concluded, the Vest Defendants' refusal to litigate has "resulted 'in prejudice to Plaintiff in the form of delay, its inability to prepare its case, and ever-increasing attorney fees and costs, as well as creating a substantial interference with the judicial process.'" (#133 at 6, quoting *Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-cv-00926-LTB-KLM, 2015 WL 920578, at *2 (D. Colo. Mar. 2, 2015)).  *See also CFTC v. Trimble*, No. 11-cv-02887-PAB-KMT, 2013 WL 317576, at *1 (D. Colo. Jan. 28, 2013) (entering default judgment for CFTC and noting, "Defendants may not simply sit out the litigation without consequence").

### 1.  Jurisdiction

The Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes the CFTC to seek injunctive and other relief in a United States district court against any person whenever it appears that such person has violated the Act or Regulations.  (*See* #38 ¶ 11).  The Court possesses personal jurisdiction over the Vest Defendants because they committed the acts alleged in the Complaint within this District.[9]  (*See* #38 ¶¶ 19-20).

### 2.  The Vest Defendants Misappropriated Pool Participants' Funds in Violation of Sections 4b(a)(2)(A) and (C) of the Act

Sections 4b(a)(2)(A) and (C) of the Act makes it:

> "unlawful . . . for any person, in or in connection with any order to make, or the making of, any contract of sale for any commodity for future delivery . . . for or on behalf of, or with, any other person . . . (A) to cheat or defraud or attempt to cheat or defraud the other person . . . [OR] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the

---

[9] Venue is proper in this District for the same reasons.  7 U.S.C. § 13a-1(e) (2012).

disposition of execution of any order or contract . . . .”[10]

As a matter of law, misappropriation of customer funds constitutes “willful and blatant fraudulent activity” that violates Sections 4b(a)(2)(A) and (C) of the Act. *Trimble*, 2013 WL 317576, at *6 (citing *CFTC v. Noble Wealth Data Info. Services, Inc.*, 90 F. Supp. 2d 676, 687 (D. Md. 2000)). *See also CFTC v. Siegel*, No. 13-5755, 2014 WL 7404537, at *6 (D.N.J. Dec. 30, 2014) (entering default judgment for CFTC because “[c]ourts have held that misappropriation of pool participant funds” violates Section 4b of the Act); *CFTC v. Skorupskas,* 605 F. Supp. 923, 932 (E.D. Mich. 1985) (holding that defendant violated Section 4b by misappropriating customer funds by using a small portion of solicited funds for trading and transferring the rest to herself and her family).

Here, as Defendant Tomazin explained, “Ryan Madigan, Randell Vest and I routinely misappropriated pool participant funds for ourselves while the Commercial fund was losing money, or not trading at all.”  (Tomazin Decl. ¶ 15).   Further, it is undisputed that the Vest Defendants received at least $308,640 of those misappropriated funds from R2 Commercial Fund for Defendant Vest’s own personal benefit.  (#38, Compl. ¶ 43; Koh Decl. ¶¶ 15, 26-27, 31; Tomazin Decl. ¶ 23).   Accordingly, the Vest Defendants violated Sections 4b(a)(2)(A) and (C) of the Act.

## B.  Remedies and Damages

### 1.  Permanent Injunction

Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the CFTC to seek permanent injunctive relief whenever it appears that any person has engaged in, is engaging in, or is about to engage in any violation of the Act or Regulations.  Injunctive relief under Section

---

[10] Sections 4b(a)(2) (A) and (C) of the Act apply to forex transactions as if they were commodity futures contracts.  Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012).

6c of the Act "is remedial in nature, designed to prevent injury to the public and to deter illegal conduct." *Trimble*, 2013 WL 317576, at *7.

To obtain a permanent injunction, the CFTC "must show only two things:  (1) that a violation of the Act has occurred; and (2) that there is a reasonable likelihood of future violations." *Id.*  As a result, "'[o]nce a violation is demonstrated, the [CFTC] need only show that there is some reasonable likelihood of future violations.'" *CFTC v. Wilson*, No. 11-cv-1651 WQH (BLM), 2011 WL 6398933, at *2 (S.D. Cal. Dec. 20, 2011) (citing *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).  The Court may infer a likelihood of future violations of the Act and Regulations from past unlawful conduct.  *CFTC v. Brockbank*, 505 F. Supp. 2d 1169, 1173 (D. Utah 2007), *aff'd* 316 F. App'x 707 (10th Cir. 2008) (past misconduct is "'highly suggestive of the likelihood of future violations.'")

Here, it is undisputed that the Vest Defendants knowingly and willfully misappropriated pool participants' funds (#38, Compl. ¶¶ 27, 42-43; *see also* Tomazin Decl. ¶¶ 15, 23, 32, 52), such that there is a reasonable likelihood that the Vest Defendants will commit future violations of the Act and Regulations unless permanently enjoined by the Court.  A permanent injunction is an appropriate remedy in these circumstances.  *Brockbank*, 505 F. Supp. 2d at 1173.

### 2.   Restitution, Civil Monetary Penalty, and Post-Judgment Interest

Although the Court must make a determination regarding monetary damages requested in a motion for default judgment, "the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Pro'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010). Moreover, default judgment may be entered without an evidentiary hearing where "the amount claimed is . . . one capable of mathematical calculation." *Venable v. Haislip*, 721 F.2d 297, 300

(10th Cir. 1983).  *See also Armstrong Transp. Grp., Inc. v. TR Toppers, Inc.*, No. 12-cv-02821-MSK-MEH, 2104 WL 12676222, at \*2 (D. Colo. Jan. 6, 2014) (entering default judgment based on exhibits and affidavits demonstrating that "the damages amount is mathematically calculable.")  *See also* D.C.COLO.LCivR 55.1(a)(2) (default judgment can be entered where supporting affidavit reflects "the sum certain or the sum that can be made certain by computation").

Here, the monetary damages Plaintiff seeks can be mathematically calculated based upon the Koh Declaration, the bank and trading account analysis, and documentary evidence attached thereto.   Accordingly, Default Judgment may be entered by the Court.

### a.  Restitution

 Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2012), permits the CFTC to seek equitable remedies for violations of the Act, including "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)."  Courts calculate restitution "as the difference between what Defendants obtained and the amount customers have already received back."  *CFTC v. Ross*, 2014 WL 6704572, at \*3 (N.D. Ill. Nov. 26, 2014); *see also CFTC v. Leben*, 2016 WL 7354359, at \*9 (D.S.C. Aug. 5, 2016) ("restitution is determined by calculating the total amount of funds solicited from victims of the fraud by a defendant, less any funds returned to the victims by defendant").

 Defendants solicited at least $2,471,181.64 from four pool participants and proximately caused pool participants' losses.  (Compl. ¶ 1; Koh Decl. ¶ 6).  Of the amount they solicited, Defendants returned $111,000 to one pool participant in the form of a partial redemption.  (Koh Decl. ¶ 28).  Also, Defendant Tomazin paid $288,000 in restitution in connection with his

criminal sentencing.[11] Finally, the Madigan Defendants have agreed to pay restitution in the amount of $690,727.21. (#191, Ex. A at ¶ 2). These figures provide an easily calculable restitution amount that the Vest Defendants should pay:

$2,471,181.64 (Total Funds Solicited)

-$111,000 (partial redemption)

-$288,000 (Tomazin Defendant's restitution)

-$690,727.21 (Madigan Defendants' restitution)

_____

= $1,381,454.43 (Vest Defendants' restitution)

The $1,381,454.43 figure reflects pool participants' outstanding net losses proximately caused by Defendants' fraud. Accordingly, Plaintiff requests that the Court order the Vest Defendants to pay the remaining unpaid restitution necessary to make Defendants' victims whole, or $1,381,454.43, plus post-judgment interest thereon.

### b. Civil Monetary Penalty

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2017), authorize the CFTC to seek a civil monetary penalty equal to triple Defendants' monetary gain from each violation of the Act or Regulations, or $140,000 per violation, whichever is greater. (*See* Compl. at 25, § VIII.(e)). The Court is "free to fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent." *Trimble*, 2013 WL 317576, at *9 (citing *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)). "'Conduct that violates core provisions of the Act's regulatory system – such as . . . defrauding customers should be considered very serious even if there are mitigating facts and circumstances….'" *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (quoting *In re Premex, Inc.,* [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,165 at

_____

[11] *See* Judgment, *United States v. Tomazin*, No. 1:14-cr-00790 (S.D.N.Y. Oct. 14, 2015).

34,892 to 34,893 (CFTC Feb. 17, 1988) (emphasis omitted)).

The Vest Defendants received $308,640 of the fraudulently misappropriated pool participants' funds for Vest's personal use. (Compl. ¶ 43; Koh Decl. ¶ 15). Similar cases hold that such an unlawful misappropriation warrants a significant monetary penalty. *See*, *e.g*., *CFTC v. Onsa*, No. 11-2367, 2014 WL 2960345, at *1 (E.D. Pa. Mar. 20, 2014) (entering civil monetary penalty of triple defendants' gain in commodity pool fraud case due to "the egregiousness of the defendants' intentional conduct"); *see also CFTC v. SK Madison Commodities, LLC*, No. 14-cv-02025-SHS, 2014 WL 3887755, at *5 (S.D.N.Y. June 9, 2014) (entering default judgment and ordering a civil monetary penalty of "triple the amount misappropriated").

In light of the Vest Defendants' serious misconduct and to deter future fraud, Plaintiff requests that the Court order the Vest Defendants to pay a civil monetary penalty equal to three times their monetary gain from the fraud (3x $308,640), or $925,920, plus post-judgment interest thereon. *See* Section 6c(d)(1) of the Act; Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B).

###    c.       Post-Judgment Interest

Plaintiff may seek post-judgment interest on any restitution and civil monetary penalty amounts ordered by this Court. 28 U.S.C. § 1961(a) (2012). Post-judgment interest accrues at the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment. *Id*. In light of the Vest Defendants' willful misconduct, post-judgment interest is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion, enter final judgment by default against the Vest Defendants, and issue a final order in the form of the proposed order submitted herewith.


Dated:   April 3, 2018                          Respectfully submitted,

PLAINTIFF U.S. COMMODITY FUTURES
TRADING COMMISSION

s/ Daniel J. Grimm
LUKE B. MARSH
DANIELLE KARST
DANIEL J. GRIMM
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, N.W.
Washington D.C. 20581
p: (202) 418-5000
f: (202) 418-5523
lmarsh@cftc.gov
dkarst@cftc.gov
dgrimm@cftc.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 3, 2018, I caused a copy of the foregoing Unopposed

Motion for Default Judgment and all associated papers to be filed with the Clerk of the Court via

the CM/ECF system, which will send notification to the following counsel of record:

**Counsel for Defendants Ryan Tomazin
and RAST Investor Group, LLC**:

Richard Banta
Richard J. Banta, P.C.
3773 Cherry Creek North Dr., Suite 575
Denver, CO 80209
Telephone: 303-860-8048
rjbanta@comcast.net

**Counsel for Defendants Madigan Enterprises,
Inc., R2 Capital Group, LLC, and Ryan
Madigan**:

Michael Davis
DLG Law Group
4100 E. Mississippi Avenue, Suite 420
Denver, Colorado  80246
Telephone: 303-758-5100
Fax: 303-758-5055
mdavis@dlglaw.net

I further certify that on April 3, 2018, I served the foregoing Motion and all associated

papers on the following Defendants via First-Class United States Postal Service Mail:

*Pro Se* **Defendant Randell A. Vest**
9613 Halyards Ct.
Fort Myers, FL 33919

*Pro Se* **Defendant Bulletproof Vest, Inc.**
9613 Halyards Ct.
Fort Myers, FL 33919

s/ Daniel J. Grimm
Daniel J. Grimm